JOHN J. GREENE *vs.* MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY.

November 24, 1883.

Master and Servant — Defective Machinery — Servant continuing its Use after giving Notice of Defect to Master.—If a servant, who has knowledge of defects in the instrumentalities furnished for his use, gives notice thereof to his employer, who thereupon promises that they shall be remedied, the servant may recover for an injury caused thereby, *at least* when the master requests him to continue in the service, and the injury occurs before the expiration of the time within which the defects were promised to be remedied, and where the instrumentality, although defective, was not so imminently and immediately dangerous that a man of ordinary prudence would have refused longer to use it.  His subsequent use of the defective instrumentality, under such circumstances, would not necessarily, or as a matter of law, make the servant guilty of contributory negligence. .

Same—Knowledge of Risks as well as Defects.—Under such circumstances the servant may recover, although aware, not only of the existence of the *defects*, but also of the *risks* to which they will naturally expose them.

Same—Railway Co. sending out Defective Engine—A railroad company is not relieved from the charge of negligence in sending out an employe with a defective engine, simply because it did not have sufficient time after notice of the defect to repair it, and had no other engine in proper condition to send out.

Appeal by defendant from an order of the district court for Freeborn county, *Farmer*, J., presiding, refusing a new trial.

*J. D. Springer*, for appellant.

*Lovely & Morgan*, for respondent.

MITCHELL, J. If a servant, before he enters a service, knows, or afterwards discovers, that the instrumentalities furnished for his use are defective, and understands, or by exercise of ordinary observation ought to understand, the risks to which he is thereby exposed, and if, notwithstanding such knowledge, he, without objection, and without any promise on the part of the employer that such defects will be remedied, enters or continues in such service, he cannot recover for injuries resulting therefrom, but will be deemed to have assumed all the risks of the employment thus known. Sometimes this rule has been misapplied by treating a mere continuance of a servant in the employment as conclusive evidence of his having waived objections to the known defects, regardless of facts tending to rebut the presumption of such waiver. But, with the limitations annexed, the rule as stated is undoubtedly the law as established by an unbroken line of authorities, although they disagree somewhat whether it should be put on the ground of waiver, or of contributory negligence. *Clark* v. *St. Paul & Sioux City R. Co.*, 28 Minn. 128.

But it is now almost equally well settled that if a servant who has knowledge of defects in the instrumentalities furnished for his use, gives notice thereof to his employer, who thereupon promises that they shall be remedied, the servant may recover for an injury caused thereby, *at least* where the master requested him to continue in the service, and the injury occurred within the time at which the defects were promised to be remedied, and where the instrumentality, although defective, was not so imminently and immediately dangerous that a man of ordinary prudence would have refused longer to use it. Under such circumstances his subsequent use of the defective instru-

mentality would not necessarily, or as a matter of law, make the servant guilty of contributory negligence, but it would be a question for the jury whether, in continuing its use after he knew of the defect, he was in the exercise of ordinary care. Many of the cases go farther than this, but this is as far as is necessary to go under the facts of the present case.

Courts also differ as to the ground upon which this should be placed. Some place it upon grounds of policy and justice,—upon a consideration of the unequal situation of master and servant; others, upon the ground that, in such cases, the facts rebut the presumption of a waiver on the part of the servant; others, upon the ground of a contract on the part of the employer, implied from the facts, that if the servant continues in the service in the mean time, and until the defects are remedied, the employer and not the servant will assume the risks.

We will not attempt to determine which of these is the best or most logical reason for the rule, except to say that the last seems to us very forcible, especially where there is a request to the servant to continue in the service. It is sufficient for us that the rule has generally commended itself to the judicial mind (as it does to us) as founded in sound policy and common justice. If the emergencies of a master's business require him temporarily to use defective machinery, we fail to see what right he has in law or natural justice to insist that it shall be done at the risk of the servant and not his own, when, notwithstanding the servant's objection to the condition of the machinery, he has requested or induced him to continue its use, under a promise thereafter to repair it. *Clarke* v. *Holmes*, 7 Hurl. & N. 937, 948; *Hough* v. *Ry. Co.*, 100 U. S. 213; *Patterson* v. *Pittsburg & C. R. Co.*, 76 Pa. St. 389; *Laning* v. *N. Y. C. R. Co.*, 49 N. Y. 521; *Snow* v. *Housatonic R. Co.*, 8 Allen, 441; *Holmes* v. *Worthington*, 2 Foster & F. 533. See, also, *Ford* v. *Fitchburg R. Co.*, 110 Mass. 240; *Greenleaf* v. *Illinois Cent. R. Co.*, 29 Iowa, 14; *Kroy* v. *Chicago, etc., R. Co.*, 32 Iowa, 357; Cooley on Torts, 559; Shearman & Redfield on Negligence, § 96; Moak's Underhill on Torts, 61–2; Thomp. on Negligence, 1009, 1010; Wood, Mast. & Serv. § 378, etc.

Appellant suggests that the cases only go to the extent of holding

the employer liable where the servant, *although aware of the defect, is ignorant of the risks,* and that they would not apply where, as in this case, the servant, an experienced engineer, fully understood the risks to which the defects in the engine would naturally expose him. An examination of the cases cited will not bear out this position. None of them are made to turn upon any such question. It is true, in the leading case of *Clark* v. *Holmes, supra,* Byles, J., in discussing the question how far knowledge of the defect by the servant constitutes negligence, after remarking that knowledge is only an element of negligence, adds: "But a servant knowing the fact may be utterly ignorant of the risks." But however true this is, and however important it may be in other cases, it had no bearing upon the case then being considered, which involved no such questions. Neither is there any warrant for the suggestion that the doctrine of these cases only applies where the servant, in reliance upon the promise, continues in the service supposing that the defects had been *already* remedied. The statement to that effect in Wharton on Negligence, § 221, finds no support whatever in the authorities.

This disposes of the only important question in this case adversely to the appellant. The plaintiff was in the service of the defendant, as locomotive engineer, upon a freight train running between Minneapolis and Albert Lea. On reaching the former place in the morning with his train, upon examining his engine, he discovered that the "chafing irons" between the engine and tender were partly broken off. He immediately reported the fact on the "repair-book" to the foreman of the round-house, whose duty it was to have the repairs made, and to direct what engines should go out. On returning in the evening to go out with his train, he found the engine out, but not repaired. On inquiring of the foreman why the repairs had not been made, the reply, in substance, was that he had not had time. On plaintiff suggesting that he did not like to take out this engine, that it was not safe, the foreman replied that he was short of engines to do the work of the road, and had no other to send out, and added, "*Proceed with that, and you can get it fixed at Albert Lea, if you have time; if not, I will remedy it when you get back.*"

The plaintiff did so, and, on the way, collided with another train, (for which he does not appear to be responsible,) and, in attempting to escape, was caught between the engine and tender, the defects in the "chafing irons" causing the engine to override the tender, and close up the gangway through which he was attempting to escape. It does not appear that the defect in the chafing irons rendered the engine so imminently dangerous that a man of ordinary prudence would or should, under the circumstances, have refused to run it. At least, it does not appear so clearly so that a court would hold, as a matter of law, that plaintiff was guilty of negligence in proceeding with the engine as he did. It does appear that it was liable to break in two at any time, but there is nothing conclusively showing that this would have placed plaintiff in any special personal danger, whatever might have been its effect upon defendant's property. So far as appears, there might have been no imminent danger to plaintiff from the defect had not a collision occurred,—an event which he could hardly be expected to anticipate, unless defendant's road was so negligently operated that collisions were the rule rather than the exception.

There is nothing in the suggestion that defendant was not guilty of negligence, because, in fact, it did not have a reasonable time to repair this engine that day, and had no other engine in condition to send out. That was no excuse for sending out an engine unfit for use, and it can hardly help the defendant to plead that it did not have good engines enough to do the business of the road.

The complaint alleged defects in the *engine*. On the trial evidence was admitted, *without objection*, of the defective condition of the chafing irons on both the engine and the *tender*. Defendant afterwards moved to strike out the evidence regarding the defects in the chafing irons on the *tender*, because not alleged in the complaint. The point was rather technical, for it is a matter of common understanding that a tank and tender are necessary appurtenances to every engine in use. But in any event there was no error in refusing to strike out the testimony. Having been introduced without objection, it was, at most, discretionary with the court whether to strike it out or let it

stand, especially as there is no claim that defendant was taken by surprise. *Wilson* v. *Northern Pacific R. Co.*, 26 Minn. 278.

The charge of the court that the burden was upon defendant to prove contributory negligence on the part of plaintiff, was in accordance with the law in this state, as long since decided by this court. If defendant desired a specific instruction to the effect that if contributory negligence affirmatively appeared from the evidence on the part of plaintiff himself, it would be as effectual to bar a recovery as if proved by defendant, he should have so requested.

In view of the evidence tending to show that plaintiff's injuries were very serious, and probably permanent, there is no warrant whatever for this court to interfere with the verdict on the ground that the damages ($5,900) were excessive.

The second cause of action set up in the complaint was for slight injuries received by plaintiff in another collision, at another time, and for which the jury awarded him $75. We see no reason for disturbing this verdict. The evidence is very strong that this accident was caused by the gross negligence and recklessness of defendant's superintendent in ordering the movement of a passenger train, in disregard of the previous orders of the regular train dispatcher upon which other trains were moving. The plaintiff was running his train under orders, and whether in doing so he was using reasonable precautions, was, under the evidence, a question for the jury. We cannot say as a matter of law that he was not.

Order affirmed.