# CASES DETERMINED

## *August Term, 1895.*

FERRISS, Respondent, vs. THE BERLIN MACHINE WORKS, Appellant.

90 541
102 277

*April 23 — September 26, 1895.*

*Master and servant: Personal injuries: Defective machinery: Continuing at work after notice of defect: Duty to repair: Contributory negligence.*

1. Plaintiff, an employee in defendant's shops, was injured by reason of the voluntary starting of a lathe after he had stopped it. The clutch attached to the shaft from which the lathe was driven was out of repair and could not be disconnected by means of the lever so as to stop the running of the belt. With knowledge of the defect, plaintiff had continued to work at the lathe for several weeks before he was injured; but he alleged that defendant had from time to time promised to remedy the trouble, and that he had continued at the work relying on such promises. A finding of the jury that plaintiff did not continue operating the lathe longer than a reasonable time after he knew of the defect as it then existed, is *held* to be sustained by the evidence.

2. Under the evidence (tending to show, among other things, that employees were not allowed to fix their own machines), it was not error to charge the jury that it was the duty of defendant to provide the plaintiff with tools, appliances, and machinery which were reasonably safe and fit for him to perform the work required of him, and to keep such tools, appliances, and machinery in reasonably safe and good repair, and that it was not the servant's duty to examine the tools and machinery with which he was required to work, unless it was specially committed to his care.

3. Although the jury found that plaintiff knew when he stopped the lathe that it was liable to start voluntarily unless he locked it, that he did not lock it, and that he could have locked it and thus have prevented all danger of its starting, a further finding that he was not guilty of any want of ordinary care in failing to lock the lathe is *held* to be sustained by the evidence.

APPEAL from a judgment of the circuit court for Rock county: JOHN R. BENNETT, Circuit Judge. *Affirmed.*

The complaint alleges, in effect, that at the times mentioned the plaintiff was in the employment of the defendant, working in its shops for the defendant at a lathe used for turning castings, which lathe was in a dangerous and unsafe condition, in that the clutch attached to the shaft from which the lathe was driven was out of repair, so that the same could not be disconnected by means of the lever used for that purpose, but would keep the belt extending from the shaft to the lathe running all the time; that it was possible to work said lathe, and stop and start the same, by throwing the belt from a larger to a smaller portion of the gear, or from a slower to a faster speed, and *vice versa;* that, upon complaint being made by the plaintiff, the defendant promised from time to time to remedy the same; that the plaintiff continued to so work for the defendant upon the faith of such promises; that July 12, 1892, and before such defects were fixed or repaired, the plaintiff was severely and permanently injured, by reason of such lathe starting up after being stopped by the plaintiff, and catching plaintiff's clothing, and winding his arm around a piece of iron set in said lathe, and tearing and lacerating his arm, which starting of said lathe was caused by the defect in said machinery and clutch and through the defendant's negligence in furnishing such unsafe machinery; that said injury in no wise resulted from any negligence on the part of the plaintiff.

The defendant answered by way of admissions and denials, and alleged that prior to the commencement of this

action the defendant paid to the plaintiff and to his physician, at the plaintiff's request and for his use and benefit, certain sums of money, which the plaintiff received in full satisfaction and discharge of all damages by him sustained, and thereafter to be sustained, by reason of the injuries mentioned in the complaint.

At the close of the trial the jury returned a special verdict to the effect: (1) That at and prior to the time of the plaintiff's injury the clutch, by means of its lever, could not be disconnected so as to stop the running of the belt; (2) that the plaintiff did stop the lathe just prior to receiving the injury complained of; (3) that the plaintiff did stop the lathe by shifting the lower end of the belt and pressing on the cone pulley with his hand; (4) that the plaintiff was injured by reason of the voluntary starting of the lathe after he had so stopped it; (5) that the plaintiff did know that when so stopped the lathe was liable to start voluntarily unless he locked it; (6) that after the plaintiff had so stopped the lathe he did not lock it; (7) that he could have locked it and thus prevented all danger of its starting; (8) that the plaintiff was not guilty of any want of ordinary care in failing to lock the lathe after so stopping it; (9) that the plaintiff did not continue operating the lathe longer than a reasonable time after he knew of the defect as it then existed; (10) that no want of ordinary care on the part of the plaintiff directly contributed to cause his injury; (11) that the plaintiff did not, on or about July 25, 1892, settle such claim for damages as he had sustained on account of his injury; (12) that $2,750 would compensate the plaintiff for all damage resulting from his injury. The jury, in addition, returned a general verdict, wherein they found, in effect, for the plaintiff, and assessed his damages at $2,750.

From the judgment entered upon said verdict, in favor of the plaintiff, for the damages mentioned and costs, the defendant appeals.

Ferriss vs. The Berlin Machine Works.

For the appellant there were briefs by *Ruger & Norcross,* and oral argument by *Wm. Ruger* and *J. V. Norcross.* They contended, *inter alia,* that the plaintiff's voluntary and unnecessary attempt to take his work out without locking the lathe, and with full knowledge of the danger, was negligence as matter of law. If a risk be voluntarily and unnecessarily taken, the law declares that it is at the employee's peril, and he cannot visit the consequences upon another. *Cornelius v. Appleton,* 22 Wis. 635; *Goldstein v. C., M. & St. P. R. Co.* 46 id. 406; *Jochem v. Robinson,* 72 id. 203; *Dorsey v. Phillips & C. Const. Co.* 42 id. 596–598; *Culbertson v. M. & N. R. Co.* 88 id. 567–569; *Nicks v. Marshall,* 24 id. 141, 142; *Wheeler v. Westport,* 30 id. 407; *Kellogg v. C. & N. W. R. Co.* 26 id. 257, 258; *Kelley v. Fond du Lac,* 31 id. 186; *Hawes v. Fox Lake,* 33 id. 443, 444; *Hoth v. Peters,* 55 id. 405, 411; *Richardson v. C. & N. W. R. Co.* 56 id. 347, 349; *Jewell v. C., M. & St. P. R. Co.* 54 id. 610; *Muth v. Frost,* 68 id. 425; *Martin v. Stewart,* 73 id. 553, 556; *Bibby v. Wausau L. Co.* 80 id. 367; *Corcoran v. Milwaukee G. L. Co.* 81 id. 191, 194; *Thompson v. Hermann,* 47 id. 602, 608–9; *Robinson v. Charles Wright & Co.* 94 Mich. 283; *Levey v. Bigelow,* 6 Ind. App. 667; *English v. C., M. & St. P. R. Co.* 24 Fed. Rep. 908; *McGinty v. Keokuk,* 66 Iowa, 726; *St. Louis B. & I. Co. v. Brennan,* 20 Ill. App. 555.

For the respondent there was a brief by *Fethers, Jeffris, Fifield & Matheson,* and oral argument by *O. H. Fethers* and *C. L. Fifield.*

The following opinion was filed May 15, 1895:

Cassoday, J. Counsel for the defendant has given a brief description of the lathe and its workings, as follows:

"Power and motion are transmitted by means of a clutch for connecting the driving and driven shafts, and of a belt extending from a cone pulley on the driven shaft to a cone pulley on the lathe. This latter pulley is connected with

and imparts motion to the gears, which in turn impart motion to the face plate, live center, mandrel, and castings placed thereon for finishing. A part of the mechanism of the clutch is on the right-hand end of the driven shaft, and to the left, on the same shaft, is a sleeve cone, which encircles and slides upon it. The long arm of a lever attached to this cone extends down within reach of the operator. By shifting this lever arm to the right, this cone is forced between the clutch fingers, which operates to connect the driven and driving shafts. The clutch is then said to be connected. To disconnect it, this lever arm is shifted to the left, so as to withdraw the cone from the clutch fingers. A stop collar, adjusted by a setscrew on the driven shaft, to the left of this cone, limits its play to the left — the intent being to adjust this collar far enough from the clutch fingers to permit the full withdrawal of the cone from them. If the collar be set too near, the error would be apparent, and the remedy to loosen the setscrew, slide the collar so as to give the proper space, and tighten the setscrew again.

" Another method of stopping and starting the lathe is by shifting the belt. To afford different speeds, each of the cone pulleys mentioned has four steps for the belt to run on. These are graded in their diameters from four to twelve inches. The largest step of the upper pulley is over and corresponds with the smallest step of the pulley on the lathe; the next largest above, over the next smallest below, etc.; so that the belt has the same tension when on any of the corresponding steps. If, when in use under ordinary tension on the next highest speed,— next largest step above and the next smallest below,— the lower end of the belt is thrown off to the smallest step below, the belt will be so slack as to slide on such step without turning the pulley on, and which imparts motion to, the lathe. If the belt were in use on such steps under a high tension, and were so thrown off below, it might still have tension enough to turn

the lower pulley instead of sliding upon it. If, in such case, the lower pulley was brought to a stop by pressure upon it with the hand, it would be liable to start and set the lathe in motion again at any time after removal of the staying hand. The tension of the belt is regulated by the operator, as desired, by loosening or tightening its lacings.

"To stop the lathe by shifting the belt, when on the highest speed,— largest step above and smallest below,— the upper end of the belt must be shifted to a smaller step, as it is then on the smallest step below. The lathe may be locked so as to render its starting impossible, whether the belt is running or not, by a simple operation involved in the finishing of each casting put in for that purpose. At the left-hand end of the lathe are two gears, called the front and back gears. The back gear has a small cogwheel, and the front gear a large one, at the right-hand end. When thrown into connection these cogwheels mesh, and the back gear must then make about six revolutions while the front gear makes one, because of their difference in size. These gears are used in connection in doing the first work on each casting. This is paring, and requires more power and slower motion. The front gear is then released from the pulley, so that it may take, from the back gear, its slower motion, instead of the rapid motion it has when affixed to and taking its motion from the pulley. After the paring is done, the back gear is thrown out, and the front gear affixed to the pulley, to take its rapid motion for the filing and polishing; and the lathe may then be locked instantly by a mere motion of the arm of the operator in pulling the back-gear lever towards him, and unlocked instantly by pushing this lever from him to throw the back gear out again. As before stated, the process of locking and unlocking is involved in finishing each casting. When one is finished and another is put in, the back gear is thrown in to do the paring, and this locks the lathe until the front gear is released from the pul-

ley as aforesaid; or it may be unlocked by simply throwing the back gear out again. This is what would be done if the lathe were so locked during the filing or polishing and the operator desired to resume that work again instead of 'beginning on another casting.

"In taking a casting out of the lathe, the mandrel, a round piece of steel about two feet long, on which the same is affixed about midway, is released from the hold of the dead and live centers upon its ends, by turning a crank to withdraw the dead center from it. As this is done, the left hand may be placed under the mandrel, to catch it as it drops on being released, or extended over to grasp it from above."

From the description thus given, and the special verdict mentioned in the foregoing statement, it is manifest that the case is very near, if not directly upon, the border line. Like most such cases, it is difficult to reach a satisfactory conclusion as to the legal rights of the respective parties. This difficulty does not arise from any intricacy in the principles of law applicable, but in applying well-recognized principles of law to the peculiar facts in the case. Such being the general nature of the questions presented, it is only essential to state the conclusions reached.

The plaintiff was an apprentice, and less than twenty-two years of age when he was injured. He had worked for the defendant for more than two years, but did not commence working upon the lathe in question until about May 1, 1892. The clutch, the driving shaft, the stop collar, the sleeve cone, and the setscrew, mentioned, were all above the head of the plaintiff when he was operating the lathe; and in front of him, and extending downward from the sleeve cone, was the long lever arm mentioned. The design of this lever arm was to enable the operator, by moving it to the right or to the left, to connect or disconnect the driving and driven shafts, and thus put the lathe in motion or stop the same. The jury found that, at and prior to the time of the injury,

the clutch could not be disconnected so as to stop the running of the belt by means of the lever. We must hold that there is evidence to support that branch of the verdict. Treating that finding as a verity, as we must, and it establishes the negligence of the defendant.

Counsel contend that the plaintiff, with full knowledge of such defect, continued to work for the defendant at the lathe for several weeks before he was injured, and thereby assumed the risk. The plaintiff contends that such continuance was with reliance upon the repeated promises of the defendant to fix and repair the defect. The court charged the jury to the effect that if the plaintiff, with such knowledge, continued in such employment without such assurances, then he could not recover; that, even if the plaintiff continued in such service upon the faith of such assurances, yet if he remained in the service for a longer time than was reasonable to allow the defendant to perform his promise or promises, then he must be deemed to have waived the objection and to have assumed the risk; and that whether the plaintiff, under such circumstances, continued in such employment only a reasonable time, or an unreasonable time, was mainly a question of fact to be determined by the jury from all the facts and circumstances disclosed by the evidence· on the trial. We perceive no error in these portions of the charge. The jury found that the plaintiff did not continue operating the lathe longer than a reasonable time after he knew of the defect as it then existed. Upon the record before us, we cannot say that this finding is not sustained by evidence.

It is contended that the plaintiff might have remedied the defect himself, and that his failure to do so was attributable to his own negligence. He testified to the effect that when he commenced using the lathe he saw there was something wrong with the clutch, and formed an opinion in respect to it, but could not say positively what it was, because they

were not allowed to fix their own machines. It was certainly the duty of the defendant to provide the plaintiff, while in its employment, with tools, appliances, and machinery which were reasonably safe and fit for him to perform the work required of him while so employed, and during such time to keep such tools, appliances, and machinery in reasonably safe and good repair. The charge to that effect was not error. Nor was it error, under the evidence in the record, for the court to charge, in effect, that it was not the servant's duty to examine the tools and machinery with which he was required to work, unless it was specially committed to his care. We cannot say, upon the record before us, that it was the plaintiff's duty to remedy the defect mentioned.

The jury found, in effect, that just prior to the injury the plaintiff stopped the lathe by shifting the belt and pressing the cone pulley, as mentioned; that the lathe thereupon voluntarily started, as the plaintiff knew it was liable to do unless he locked it; that he could have locked it and thus prevented all danger of its starting, but did not. It is contended that the plaintiff was guilty of contributory negligence by thus failing to lock the lathe, as he should, in finishing each casting. The jury found, in effect, that such failure was no want of ordinary care on his part which directly contributed to cause the injury. We cannot say, as a matter of law, that such finding is unsupported by evidence. *Kaples v. Orth*, 61 Wis. 531. The court charged the jury to the effect that it was the plaintiff's duty, without warning, to observe due and ordinary care; that any omission in that regard was at his own peril; that for an injury caused by such want of ordinary care the defendant was not liable; and that if the plaintiff failed in any degree, even in a slight degree, to observe ordinary care, he could not recover. We cannot say that the defendant was prejudiced by such portions of the charge, nor, as a matter of law, that the finding

The State ex rel. Milwaukee Street R. Co. vs. Anderson.

of the jury, to the effect that no want of ordinary care on the part of the plaintiff directly contributed to cause his injury, is unsupported by evidence.

We think the question of settlement or no settlement was properly submitted to the jury, and the refusal to further instruct upon that question was not error.

We find no substantial or reversible error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied September 26, 1895.