CHARLES A. SMITH v. E. W. BACKUS LUMBER COMPANY.[1]

May 20, 1896.

Nos. 9804—(29).

**Verdict Sustained.**

*Held,* the verdict is sustained by the evidence.

**Injury to Servant—Careless Fellow Servant—Knowledge of Master.**

*Held,* the master is liable for his negligence in retaining in his employ an habitually careless or neglectful fellow servant, known to the master to be such, by reason of which negligence the plaintiff was injured.

**Same—Assumption of Risk.**

Rule applied that where the servant complains of such neglect to the master, and he promises to remedy the same, the servant may continue in the employment a reasonable length of time thereafter, in expectation that it will be so remedied, without assuming the risk, or being guilty of contributory negligence, unless the danger is so apparent, imminent, and immediate that a man of ordinary prudence would refuse so to remain; and that what is such reasonable time is ordinarily a question for the jury.

Appeal by defendant from a judgment of the district court for Hennepin county, in favor of plaintiff for $1,855.81, after a trial before Belden, J., and a jury. Affirmed.

*Koon, Whelan & Bennett,* for appellant.

*R. L. Penney,* for respondent.

CANTY, J. Plaintiff recovered a verdict for damages for personal injury, and defendant appeals from the judgment entered thereon after the making of an order denying its motion for a new trial.

Plaintiff was employed by defendant as night sawyer in its sawmill during the time from May until August 21, 1894. On the night of the last-named day, the band saw which he was running struck a piece of plate iron imbedded in the log, causing the teeth of the saw to break and fly off, one of which teeth struck the plaintiff in his right eye, destroying it, and another tooth struck him in the face, causing a flesh wound. The piece of iron was about $2\frac{1}{2}$ feet long, 4 inches wide, and one-quarter of an inch thick. It had

[1] Reported in 67 N. W. 358.

been driven into a split in the butt end of the log, evidently by some malicious person, and about an inch and one-half or two inches of the end of it remained exposed, and bent over against the end of the log.

Plaintiff's claim is that his injury was caused by the negligence of the defendant in failing to furnish him with sufficient light to enable him to inspect the logs properly, and discover pieces of iron or stone which were liable to be stuck on or embedded in the logs, and that, if proper light had been so furnished, he would have discovered the piece of iron in question in time to have prevented the injury. The lights in use were incandescent electric lights, and the electricity to supply them was generated on the premises by the same steam plant which operated the sawmill. Appellant insists on but one point,—that the evidence is not sufficient to sustain the verdict.

We are of the opinion that plaintiff can claim nothing by reason of the removal, a couple of weeks before the injury, of the light known as the "sawyer's light," as the evidence conclusively shows that, by reason of its position, the water and dirt from the saw covered the glass, and obscured the light, so as to make it useless.

We are also of the opinion that he can claim nothing by reason of there being too few lights at and about the place where he worked, as he himself testified as follows:.

"Q. At other times than those periods you have spoken of, when the lights were down, they were good? Except at the times when the lights went down in the way you have described, they were good, so you could see? A. They were good; as bright as day. Q. You had no fault to find with them? A. No fault to find with them. Q. Then the cause of your trouble and of your complaint here is not that there were not sufficient lights, but that they let them go down, so you couldn't see; is that right? A. Yes. Q. And it was these periods of going down that you complain of here? A. Yes, sir. Q. Now, do I understand you to say that they would be down two or three hours at a time before midnight, and two or three hours at a time after midnight? A. Yes, sir. Q. And during those times it was so dark that, if you raised your hand like that [indicating], a man off eight feet couldn't tell whether you had up two fingers or one? A. Yes; that's right. Q. That is true? A.

Yes, sir; that is true.  Q. And this condition of the lights was not only on your side of the mill, where you ran your saw, but was over on the other side, too?  A. It was on the other side, too. * * * Q. It was all over that floor where you were?  A. Yes."

Unless it can be presumed from such evidence as this that the electric light plant was out of order, there is no evidence to show that it was.  Conceding, as appellant contends, that the most the evidence tends to show is that there was a lack of power, and that this may have been caused solely by the failure of the fireman (a fellow servant of plaintiff) to keep up sufficient steam in the boilers, we will proceed to dispose of the case on that theory.

Assuming, then, that the irregular action of the light was caused by the failure of plaintiff's fellow servants to do their duty, and keep up sufficient steam, is the master liable?  The evidence tends to show that the failure had become habitual, and that, for some time before the injury, defendant's general manager, Backus, had full knowledge of that fact.  Then there was evidence from which the jury were justified in finding that plaintiff was injured by reason of the negligence of the master in retaining in his employ an habitually careless and neglectful fellow servant of plaintiff. The master is liable for such negligence.  Wood, Mast. & Serv. § 430; 2 Thompson, Neg. 971, 974.

The only other question to be considered is whether the plaintiff, by remaining in defendant's employ, was guilty of contributory negligence, or assumed the risk of this negligence, and therefore of the consequent failure of light.  Plaintiff testified that, about two weeks before the injury, he complained to the manager, Backus, about the insufficiency of the lights.  Said the witness: "Q. State what was said by you and by Mr. Backus at that time, Mr. Smith. A. Well, the lights went almost out, and he said, 'What's the matter with them?'  Q. Who said that?  A. Mr. Backus; and I said: 'I don't know.  They are that way half of the time.'  And I says: 'I can't see to do my work.'  And he says: 'I will look after it. * * * I will see that the lights are better.'  Q. What did you say?  A. I said I couldn't see to do my work.  I couldn't see whether a board was a number one shop common, or clear, and I couldn't tell a shaky one from a good one.  * * *  That is all that was said."

64 M.—29

There were between 400 and 500 men employed in the mill. Flannigan was the head foreman or superintendent under Backus, and took charge mostly in the daytime. It appears from the evidence that, in the night time, Gagnon had charge, at least in the absence of Flannigan. Plaintiff testified that one night, "just about a week" before the injury, when Flannigan was absent, he (plaintiff) complained to Gagnon of the insufficiency of the lights. Said the witness: "I asked him if we couldn't have better lights there; that it was dangerous to work there; and, if they were not made better, I was going to quit." "He said they were going to make them better."

We are of the opinion that, under this evidence, it was a question for the jury whether or not, at the time of the injury, plaintiff assumed the risk of insufficient light. We cannot say, as a question of law, that the danger was so apparent, imminent, or immediate that a person of ordinary prudence would not, after these promises, have continued in the employment until after the time that plaintiff was injured, or that the plaintiff continued in that employment longer, at least after the last promise, than a person of ordinary prudence should have continued, on the expectation that the defect would be remedied. See Greene v. Minneapolis & St. L. R. Co., 31 Minn. 248, 17 N. W. 378; Rothenberger v. Northwestern C. M. Co., 57 Minn. 461, 59 N. W. 531.

This disposes of the case, and the judgment appealed from is affirmed.