THE McFARLAN CARRIAGE COMPANY *v.* POTTER.

[No. 2,546.   Filed November 4, 1898.]

MASTER AND SERVANT.—*Promise to Repair.—Assumption of Risk.—* Where a servant, by reason of the promise of the master to repair a defect in appliances with which he was at work as soon as the job upon which he was then engaged was completed, continued in the service and was injured, during the time required to complete such work, he should be regarded as relieved from the assumption of the risk. This holding being in conflict with *Standard Oil Co.* v. *Helmick*, 148 Ind. 457, the cause is transferred to the Supreme Court.

From the Rush Circuit Court.  *Transferred to Supreme Court.*

*Miller & Elam, McKee, Little & Frost* and *Smith, Cambern & Smith,* for appellant.

*Connor & McIntosh* and *Morris, Innis & Morgan,* for appellee.

BLACK, . J.—The appellee recovered judgment against the appellant for a personal injury. The appellant's demurrer to the complaint for want of sufficient facts was overruled.

It was shown in the complaint that the appellant, a private corporation, was engaged in manufacturing carriages; that the appellee, on the 12th of December, 1895, and for six months prior to that date, was an employe of the appellant in its shops; that on that day and for several days before, the appellee, by order of the appellant, was operating a rip sáw in appellant's factory as its employe; that the table in which the saw was situated and the saw, at the time of the injury complained of, were defective and out of repair, as follows: that the table should have been so situated that the top thereof would be level, but the floor on which it stood had given way and sunk down, causing the top of the table to stand in a slanting position; that the slot irons upon the table should have been even with the top of the table, so that the top of the table would have a smooth and even surface, but the slot irons had become raised as much as one-fourth of an inch above the top of the table; that the saw should have stood perpendicular, but its top stood one-fourth of an inch from a perpendicular line; that said defects in the saw and table had existed for several days, and the appellant had full knowledge of said defects; that by reason of said defects, the hazards of operating the saw were greatly increased; that on said day, while the appellee was operating the saw,

by the orders of the appellant, as its employe, the piece of timber that he was then cutting with the saw was, by reason of said defects in the saw and table, caught by the saw in such manner as to quickly turn said piece of timber, and the piece of timber being thus unexpectedly and quickly turned, the appellee's hand was thereby thrown against the saw, whereby his hand was cut and mangled by the saw to such extent that the hand and the use thereof were entirely and forever destroyed, and he had suffered and still suffered great pain from the injury. It was further alleged, that the appellant, from time to time before the appellee received said injury, promised him that it would cause the saw and table to be repaired; that appellee had not been operating the saw for several days prior to the happening of said injury; that on the morning of said day the appellant promised the appellee that it would repair said saw and table as soon as the job of work that the appellee was then working on was completed; that the appellee, relying upon said promise, by order of the appellant, commenced to operate said saw, and was injured within two hours thereafter and before said job of work was completed; that the appellee, relying upon said promises to repair the saw and table, and at the request of the appellant, continued to operate the same until he received said injury, believing from day to day that the appellant, in pursuance of its promise, would repair said defects in the saw and table; that at the time he received said injury he was operating the saw with due care, and was free from any fault or negligence on his part; that said injury was occasioned wholly by said defects in said saw and table and the negligence of the appellant; that by reason of said injuries, the appellee was damaged in the sum of, etc.; wherefore, etc.

Upon the question as to the responsibility of a mas-

ter for injury suffered by his servant while continuing the service under a promise of the master to repair a hazardous defect, there has been some want of uniformity in the decisions, and especially in the announced reasons upon which adjudications have proceeded.   The reciprocal duties and rights of master and servant arise out of their contractual relation. It is the master's duty to exercise reasonable care and diligence to provide and maintain a safe place and safe appliances for the use of the servant in the performance of his duties under the employment, and the master's failure in this regard is treated as negligence. The servant is presumed to contract with reference to the risks ordinarily incident to the particular employment, and he is regarded as having assumed all such ordinary risks.   He is also regarded as assuming all risks of which he has knowledge, if with such knowledge he voluntarily continues in the service without any promise of the master to remedy the defects by which they are occasioned.   But if upon the servant's complaint or objection, the master promises to repair the defect, and requests the servant to continue to use the defective appliance, and the servant complies with the request in reliance upon the promise, he cannot be regarded as assuming the risk of such defect.

The servant is bound to exercise ordinary care for his own safety, and he cannot recover for an injury suffered through the master's fault if the servant's own negligence contributed thereto proximately.   It is sometimes said in the opinions of courts, that when the master so promises he assumes the risk.   He does not insure the safety of the servant.   It is the master's work that is being done with his appliances, and if he will have it done with dangerous appliances, and to that end and to induce the protesting servant to go on, the master requests the servant to proceed,

and promises that he will repair, and the servant consents and obeys in reliance upon the promise, and is injured through such defect, there is a breach of duty on the part of the master which may be, as it is, classed as negligence. The servant is bound to exercise ordinary care, and if the danger from the defect which the master has promised to repair is so obvious and imminent that negligence can be fairly imputed to the servant for knowingly exposing himself to it, the risk being one which an ordinarily prudent person would not willingly encounter under the circumstances, the master cannot be held liable for injury resulting to the servant from such defect. The servant may recover when his injury has been occasioned without his negligence from a risk which he had not assumed. Where the servant calls the attention of the master to a defect which occasions an extraordinary risk, and thereupon the master promises to repair and requests the servant to continue in the services and the servant complies with the request relying upon such promise, he may recover for an injury suffered through such defect without his contributory negligence.

It has sometimes been decided in effect that he cannot recover for an injury suffered in the use of such defective appliance after the lapse of a reasonable time for the performance of the promise to repair. Whether this rule should be placed upon the ground that the servant in the continued service after such period assumes the risk, or upon the ground of his contributory negligence, perhaps need not be determined for the decision of the question as to the sufficiency of the complaint before us, though where the servant is using a defective appliance with the knowledge of its defect and the risk thereof, and it cannot be said that he is still using it under the master's direction with

reliance or reasonable grounds for reliance on the promise of the master to repair, the authorities would seem to lead to the conclusion that he should be considered as having assumed the risk, as in the case of so serving without any promise of the master to repair. In *Hough* v. *Railway Co.*, 100 U. S. 213, the court by Mr. Justice Harlan adopts the statement of Shearm. & Redf. Neg. (section 96), that "there can be no doubt that, when a master has expressly promised to repair a defect, the servant can recover for an injury caused thereby, within such a period of time after the promise as it would be reasonable to allow for its performance, and, as we think, for an injury suffered within any period which would not preclude all reasonable expectation that the promise might be kept." In the same case is quoted also the following statement of Mr. Cooley in his work on Torts: "If the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant by continuing the employment engages to assume the risks." In the fifth edition of Shearm. & Redf. Neg. (published this year), section 215, it is said: "There is no longer any doubt that where a master has expressly promised to repair a defect, the servant does not assume the risk of an injury caused thereby within such a period of time after the promise as would be reasonably allowed for its performance, or indeed, within any period which would not preclude all reasonable expectation that the promise might be kept. * * * Nor, indeed, is any express promise or assurance from the master

necessary. It is sufficient, if the servant may reasonably infer that the matter will be attended to." In *Romona, etc., Co.* v. *Phillips,* 11 Ind. App. 118, 128, it was said, that if under all the circumstances "and in view of the promise to remedy the defect, the appellee was not wanting in due care in continuing to use the defective and dangerous machinery, or the manner in which he used the same, then the appellant will not be excused for the omission to supply proper and safe machinery on the ground of contributory negligence. If the danger on account of the use of the defective machinery was not of so grave a character that it would deter a reasonably prudent man from incurring it, and if in the line of his duty appellee used care commensurate with the danger, he was not guilty *per se* of contributory negligence." In *Indianapolis, etc., R. Co.* v. *Ott,* 11 Ind. App. 564, where a brakeman having reported a defect in his lantern to the superintendent, who directed the brakeman to continue at his work and promised a new and safe lantern when it arrived, saying that he was expecting it every day, it was said by the court: "The promise of appellant to provide appellee with a new lantern within the reasonable time necessary for its performance removed all ground for the argument that he, by continuing in the employment, under the circumstances disclosed, assumed the risk of the dangers incurred by the use of the defective lantern." In *Greene* v. *Minneapolis, etc., R. Co.,* 31 Minn. 248, 17 N. W. 378, it was said: "If the emergencies of a master's business require him temporarily to use defective machinery, we fail to see what right he has in law or natural justice to insist that it shall be done at the risk of the servant and not his own, when, notwithstanding the servant's objection to the condition of the machinery, he has requested and induced him to continue its use,

under a promise thereafter to repair it." In *Indianapolis, etc., R. Co.* v. *Watson,* 114 Ind. 20, 27, after a review of many cases, it is said: "The rule which we regard as sound in principle and supported by authority may be thus expressed: The employe who continues in the service of his employer after notice of a defect augmenting the danger of the service, assumes the risk as increased by the defect, unless the master expressly or impliedly promises to remedy the defect. The promise of the master is the basis of the exception."

In *Roux* v. *Blodgett, etc., Co.,* 85 Mich. 519, 48 N. W. 1092, the servant, on the day before the injury, called the attention of the superintendent to the defect, and the latter promised to attend to it that night. When the servant went to the mill the next morning, nothing having been done, he again called the superintendent's attention to the defect, and the latter stated that he had not had time, but that he would fix it at noon, directing the servant to go to work, but to take care of himself till noon, and that it would then be fixed. About 10 o'clock of the same day, the servant was injured. It was said by the court that there was no voluntary assumption of the risk on the part of the servant.

It was held not to be contributory negligence for a servant to continue to work with an incompetent helper, if he had been assured by the foreman who had authority to engage and discharge servants, that a suitable person would be employed in the place of the helper as soon as such person could be obtained. *Wust* v. *Erie City Iron Works,* 149 Pa. St. 263, 24 Atl. 291. In *Greene* v. *Minneapolis, etc., R. Co., supra,* the rule was stated, in effect, that if a servant who has knowledge of defects in the instrumentalities provided for his use, fully understanding the risks to

which such defects would naturally expose him, gives notice of the defects to his employer, who thereupon promises that they shall be remedied, the servant may recover for an injury caused thereby, at least where the master requested him to continue in the service, "and the injury occurred within the time at which the defects were promised to be remedied," and where the instrumentality, although defective, was not so imminently and immediately dangerous that a man of ordinary prudence would have refused longer to use it. It was said also that the statement in Wharton on Negligence, section 221, to the effect that the rule only applies where the servant in reliance upon the master's promise continues in the service supposing that the defects had been already remedied, finds no support whatever in the authorities. In that case the plaintiff, judgment in whose favor was affirmed, was a locomotive engineer who had reported a defect in the engine, and had stated his objection to taking the engine out on that account, whereupon the foreman stated that he had no other engine to send out and added, "Proceed with that, and you can get it fixed at Albert Lea, if you have time; if not, I will remedy it when you get back." The plaintiff did so, and was injured on the way. See, also, *Harris* v. *Hewitt*, 64 Minn. 54, 65 N. W. 1085; *Drop Forge, etc., Co.* v. *Van Dam*, 149 Ill. 337, 36 N. E. 1024. In *Eureka Co.* v. *Bass*, 81 Ala. 200, 8 South. 216, where six days before the accident the master promised to get another fuse instead of the defective one in use, and told the servant to do the best he could with what he had, it was held error to refuse to charge that the servant assumed the risk if knowing the danger, and that the promise to get another fuse had not been kept within a reasonable time, he still continued in the service using the defective fuse. In *Rothenberger* v. *Northwestern, etc., Co.*,

57 Minn. 461, 59 N. W. 531, it was held that the servant may recover for an injury caused within such a period of time after the promise as would be reasonably allowed for its performance, or within any period which would not preclude all reasonable expectation that the promise might be kept. In *Ferris* v. *Berlin Machine Works*, 90 Wis. 541, 63 N. W. 234, where the plaintiff, a servant with full knowledge of a defect in machinery whereby he was injured, continued to work with it for several weeks before the injury, it was held not error to charge the jury that if he continued in the service upon the faith of repeated promises of the master, the defendant, to repair the defect, yet if he remained in the service for a longer time than was reasonable to allow the defendant to perform his promise or promises, then he must be deemed to have waived the objection and to have assumed the risk, and that whether he under such circumstances continued in such employment only a reasonable time or an unreasonable time was mainly a question of fact to be determined by the jury from all the facts and circumstances disclosed on the trial. When the servant continued to serve a week after the last promise to remedy a defective electric light, it was held to be a question for the jury whether or not at the time of the injury he assumed the risk of insufficient light. *Smith* v. *Backus Lumber Co.*, 64 Minn. 447, 67 N. W. 358. Where, upon complaint of the servant of the want of ladders in a shaft of a mine, the master said he had sent for ladders and that as soon as they came he would put them in, it was held to be a question for the jury whether a reasonable time to remedy the defect had passed after the promise and before the injury. *Davis* v. *Graham*, 2 Colo. App. 210, 29 Pac. 1007.

We do not understand the rule of exception to be that to relieve the servant from the assumption,

of the risk he must be in constant expectation after the promise that the defect will be repaired immediately. He may, relying upon the promise that the repairs will be made, use the defective appliance for a reasonable time with knowledge that it has not yet been repaired and in the expectation of the future repair in fulfilment of the promise. In such case there is some period of use while waiting for the repairs. It may be as reasonable to go on in expectation that the repairs will be made when the present stress of work is over, as to go on in reliance upon a general or indefinite promise to repair. If the servant does go on and is injured while doing so, the question would seem to be whether or not he has continued to use the machine or appliance for such an unreasonable time after the making of the promise that it may be said reasonably that the servant was not when injured continuing in fact under the master's promise to repair, and therefore had assumed the risk. If he had thus assumed the risk by continuing longer than a reasonable period of waiting, this is matter of defense. The assumption of risks by a servant is contractual and does not constitute contributory negligence. In *Louisville, etc., R. Co. v. Orr,* 84 Ind. 50, it was held, that in an action by a servant against the master to recover for an injury sustained by the use of defective machinery negligently supplied by the master, facts showing that the servant assumed the risks incident to the use of the defective machinery amount to an affirmative defense precisely as an express agreement to assume such risks would have done.

If after a promise of the master to repair whereby the servant is relieved from the assumption of risk which would otherwise be implied, he continues in the use of the defective appliance for such a period that he cannot claim that at the time of his injury he was

still so under protection of such promise, he must be regarded as at that time assuming the risk. The servant having shown in the complaint the master's promise and request and that the master had assumed the risk, or the servant had been relieved from the assumption thereof, it would seem to devolve upon the master in defense to show that at the time of the injury the risk had been assumed by the servant. If, however, it should be regarded as more proper to say that such unduly long continued use by the servant is contributory negligence, the general averment of his freedom from fault or negligence, in the absence of facts indicating the contrary, would be sufficient.

In the argument before us there has been much discussion of two comparatively recent cases in our Supreme Court. *Burns* v. *Windfall, etc., Co.,* 146 Ind. 261, and *Standard Oil Co.* v. *Helmick,* 148 Ind. 457. In the former case the court, after stating the positions taken by counsel, declined to pursue the inquiry as to the reason for the exception to the rule that the servant assumes the hazards incident to such defects as he has knowledge of, in case of a promise of the master to remedy the defect; and the court did not state when and how the exception is allowable. The court said that the complaint under discussion was not sufficient under any recognized statement of the rule and the exception. In holding the complaint bad, therefore, the court cannot be regarded as having intended to pronounce against any recognized form of statement, and we find it difficult to deduce any rule from the case, upon which we could base our decision of the case at bar. If it can be said that the decision is to the effect that the complaint of the servant must show either that he at the time of the injury had continued to use the defective appliance after the master's promise to repair had been delayed an unreasonable

time, or that the master had had a reasonable time after the promise and before the injury in which to make the repairs, we cannot find sufficient support for such a decision. In *Standard Oil Co.* v. *Helmick, supra,* the court after finding itself justified in reversing the case on the ground that the special verdict failed to show that the servant was free from contributory negligence, proceeded to discuss the claim put forward on behalf of the servant that the facts found brought him within the exception to the general rule that the employe who continues in the service after notice of a defect in machinery, etc., augmenting the danger, assumes the risk, the exception being that he does not assume such risk if the master expressly or impliedly promises to remedy the defect. The court said, we think correctly, "In case of such promise to repair by the master, relied upon by the servant, inducing him to remain in the service, the servant may recover for an injury caused by such defect, within such a period of time after the promise as would be reasonable to allow for such repairs to be made." Among the cases cited in support of this proposition was *Indianapolis, etc., R. Co.* v. *Watson, supra.* The court also cited as authority for the same proposition *Burns* v. *Windfall, etc., Co., supra.* In this Helmick case it was found that the servant had known of the defect two weeks before he was injured, and the master had knowledge of the defect one week, in ample time to have repaired said machine and remedied said defect before plaintiff's injury. About a week before the injury the servant notified the master of the defect, and the master then promised to repair it "as soon as the order they were then filling was turned out." It was not stated whether or not the order had been filled at the time of the injury, though it was stated that the promise to repair was not fulfilled, and it appeared that the servant

McFarlan Carriage Co. *v.* Potter.

continued to use the defective appliance and was injured after the master had had ample time, subsequent to the promise, to make the promised repair. It was said by the court that the promise did not relieve the servant from the risk during the time required to run out the order, and that the burden of showing that the servant's injury occurred after the expiration of the time required for filling the order, and within a reasonable time thereafter for making the repairs, was on the servant, and that a failure to find that the injury occurred after the order was finished and within such reasonable time thereafter must be held as a finding against him on that point.

With such a conclusion we cannot find ourselves able to agree. These cases seem from the claims of counsel in argument to be regarded as establishing a new rule of exception in this State, which as we think is not supported by sound reason or good authority. It is of great importance that there be no uncertainty in the decisions on such a matter. It is after hesitation and with the highest respect for the Supreme Court that we are driven by our duty to refer this cause to that court under the provision of the statute that when this court in a case pending here shall conclude that any decision of the Supreme Court should be overruled or modified, it shall be our duty to transfer the cause with our opinion of what the law should be held to be to that court.

The clerk will transfer this cause and certify this opinion to the Supreme Court.