Daugherty *v.* Midland Steel Co.

DAUGHERTY *v.* THE MIDLAND STEEL COMPANY.

[No. 2,762. Filed May 19, 1899.   Rehearing denied Oct. 12, 1899.]

APPEAL AND ERROR.—*Final Judgment.—Dismissal.*—Where a verdict was returned, a motion in arrest of judgment sustained on account of the insufficiency of the complaint, and the cause stricken from the docket, the case reached such an end that an appeal will lie. *p. 82.*

MASTER AND SERVANT.—*Defective Machinery.—Knowledge of Danger. —Complaint.*—In an action by a servant against the master for damages for personal injuries sustained on account of defective machinery, it is not sufficient to allege freedom from fault, but he must show that he had no knowledge of the danger, or, having knowledge, he must show an excuse for continuing in the work at which he was injured. *pp. 82, 83.*

SAME.—*Defective Machinery.—Knowledge of Danger.—Promise to Repair.—Time in which to Make Repairs.—Complaint.*—In an action by a servant for injuries sustained on account of defective machinery, pending a promise of the master to repair the same, the complaint need not allege that an unreasonable time had not elapsed for the fulfilment of the promise. *pp. 83-85.*

SAME.—*Defective Machinery.—Knowledge of Danger.—Promise to Repair.*—The question whether a servant continued to work for an unreasonable time with defective machinery after a promise by the master to make repairs must vary according to the circumstances of the case, and is a question of fact for the jury. *pp. 84, 85.*

SAME.—*Defective Machinery.—Knowledge of Danger.—Promise to Repair.—Complaint.*—Where a complaint in an action by a servant for injuries sustained on account of defective machinery alleged that the servant complained of the defects and the master promised to remedy them, and that the servant, relying upon such promise, continued in the service and was injured within six days after the promise was made, an allegation that a sufficient time had elapsed for the fulfilment of the promise when the injury occurred does not vitiate the complaint. *pp. 84-86.*

From the Delaware Circuit Court.   *Reversed.*

*J. N. Templer, C. C. Ball* and *E. R. Templer,* for appellant.

*W. H. H. Miller, J. B. Elam, S. D. Miller* and *J. W. Fesler,* for appellee.

BLACK, C. J.—The appellant brought his action against the appellee to recover damages for a personal injury. The complaint showed that the appellant was engaged as an employe of the appellee in its manufacturing establishment, at work in a pit wherein was a certain hydraulic crane, connected with which was a hydraulic feed pump, by the use of which the water to operate the crane was pumped from a cistern into an accumulator, whence the water flowed into the crane and operated it. From the jib of the crane were hung certain heavy iron chains, and the crane was used in appellee's business for lifting, moving, and handling heavy billets of steel and iron and other weighty articles. It was operated by hydraulic pressure, and when in proper order and condition, easily, safely, readily, rapidly, and promptly could be started, moved, stopped, and otherwise controlled by the person operating it, whether loaded or empty. The pit in the factory in which the crane was operated was large and roomy, and furnished reasonable opportunity for the workmen there employed to perform their duties with reasonable safety. It was alleged that the appellee hired the appellant to work at said business in said pit, where said crane was operated, and he worked therein pursuant to said hiring; that while he was so working therein, on or about the last of September, 1895, and about ten days next before he suffered the injury complained of, the appellee negligently permitted said crane, and the appliances whereby it was so operated, to become and remain defective and out of repair, in that the water-valves, commonly called check-valves, of said hydraulic feed pump and the accumulator of said crane became and were worn, untrue and out of repair, and would not fit tightly in and upon their respective valve-seats in said pump, so that by reason of said defect in said check-valves, and their failure to fit tightly in and upon their valve-seats, said pump leaked badly and would not hold water, and, by reason of said leaking and inability to hold water, said pump could not keep said crane suffi-

ciently supplied with water properly to perform its functions, and the leaking of said accumulator contributed to reduce the power of said crane, so that thereby it became difficult for the person operating the crane to control it, and it was difficult to start it, and impossible properly to control it, or promptly to stop it when in rapid motion, whereby the operation of the crane became dangerous to the workmen in the pit, by reason of their liability to be struck and injured by the crane and its heavy chains and the billets or heavy substances appended thereto while in motion with said crane, and whereby the hazards of the appellant's employment were enhanced. It was further alleged, that at the same time the appellee negligently permitted the available dimensions of said pit to become and to remain materially lessened, by reason of accumulations therein and around the sides thereof of large quantities of scrap, dirt, sand, clay, bricks, steel billets, and molds, whereby said workmen laboring in said pit were hampered and rendered in danger from being hit by said chains and loads attached thereto while in motion with said crane, and whereby said dangers of said workmen were greatly increased and the hazards of appellant's said employment were further enhanced. It was alleged that the appellant, "on or about the last of September, 1895, and within about ten days prior to the date of plaintiff's said injury hereinafter stated, having knowledge of the dangers and hazards of his said employment, complained about the same to" certain persons named, being defendant's superintendent of steel furnaces in said factory, its foreman of the open hearth steel furnaces in said factory, its night foreman of said open hearth steel furnaces in said factory, and the defendant's pit boss of said pit where plaintiff worked; "and particularly the plaintiff complained to said parties of said defective crane and appliances; and defendant by her said officers, superintendent, foremen, and boss aforesaid, then and there induced plaintiff to continue to work in said dangers by promising that within a reasonable time said

crane and appliances would be repaired and its appliances be put in proper working order, and by promising to remove said scrap, dirt, sand, clay, bricks, steel billets, and molds from said pit; that soon after the making of said promises, and while said promises remained in force, and when sufficient time for the fulfilment of said promises had elapsed, to wit, within six days after said promise was made, and when the same was wholly unfulfilled, and when the plaintiff believed and had good reason to believe the defendant still intended to fulfil said promises, and while plaintiff was so working in said pit in defendant's said business in pursuance of said hiring, and while said service was not so imminently dangerous that a man of ordinary prudence would have refused to work therein, said crane, in spite of the efforts of the persons operating the same to stop the same, and while being so operated in defendant's said business, moved swiftly and caused heavy chains so hanging from said jib thereof to strike plaintiff and knock the plaintiff against a steel post, whereby," etc., the plaintiff's injury being particularly described.    It was alleged that if said crane and said appliances had been kept constantly in good repair, said crane could have been promptly stopped without striking or injuring the appellant; that said hampered condition of said pit, resulting from said accumulations therein of scrap, dirt, sand, clay, brick, steel billets, and molds, hindered the appellant from eluding and escaping said injury from said chains; that the appellee's "permitting said crane and said appliances so to become defective and out of repair, and said permitting said scrap," etc. to accumulate in said pit was the sole and immediate cause of said injury to appellant; that the appellant was without fault or negligence contributing to his said injury; "that by reason of the premises, the plaintiff has been damaged," etc.

The appellee answered by a general denial and a paragraph of affirmative defense, which need not be further

noticed.   There was a trial by jury, and a general verdict in favor of the appellant for $2,500 was returned, with answers of the jury to interrogatories submitted by the parties.   The appellee moved in arrest of judgment, upon the ground that the complaint did not state facts sufficient to constitute a cause of action.   The court sustained this motion and ordered that the judgment rest, to which ruling and order the appellant excepted; and thereupon the appellant asked leave to amend the complaint, and time was given; but at the next term of the court, the appellant withdrew his request to amend, and, upon the order of the court, the cause was struck from the docket.

There has been some discussion by counsel of a suggestion that there has been no final judgment, and that therefore the appeal is not well taken.   We cannot accede to this suggestion.   The controversy was ended between the parties so far as the court below could do anything in this case to terminate it.   The case had reached such an end in the court below that under the precedents and authorities in this State an appeal would lie.   *Powell* v. *Kinney*, 6 Blackf. 359; *Raber* v. *Jones*, 40 Ind. 436, 441; *Crawford* v. *Crockett*, 55 Ind. 220, 225; *Newman* v. *Perrill*, 73 Ind. 153; *Stewart* v. *Terre Haute, etc., R. Co.*, 103 Ind. 44.

We are to determine whether or not the complaint was so defective that it could not be regarded as sufficient after verdict.   The part of the complaint to which the argument before us relates is the above quoted portion relating to the promise to repair and the continued service thereafter of the appellant.   In *McFarlan Carriage Co.* v. *Potter*, 21 Ind. App. 692, we had occasion to consider the principles governing the class of cases to which the one at bar belongs.   That case was afterward decided by the Supreme Court, on the 20th day of April, 1899, *McFarlan Carriage Co.* v. *Potter*, 153 Ind. 107.   The learned counsel for the appellee in the case at bar represented the appellant in that case, presenting similar theories in both cases.   We may somewhat shorten this

Daugherty *v.* Midland Steel Co.

opinion by referring to the opinions delivered in the case just mentioned by the Supreme Court and this Court.

It is a familiar rule of pleading in such cases, in this State, that it is not sufficient for the complaining servant to allege his freedom from fault and negligence, but he must also show that he had no knowledge of the danger, since if he did have such knowledge and voluntarily continued in the service, he is deemed to have assumed the risk as an incident thereof. *Louisville, etc., R. Co.* v. *Sandford*, 117 Ind. 265; *Peerless Stone Co.* v. *Wray*, 143 Ind. 574. In a complaint not showing the complaining servant's ignorance of the danger, but showing that he had knowledge thereof, and while continuing in the service with such knowledge was injured, there should be some averment showing an excuse for so continuing in the work at which he was injured; otherwise the plaintiff will be regarded as having assumed the risk. *Lake Shore, etc., R. Co.* v. *Stupak*, 108 Ind. 1. If it is intended to rely upon the master's promise to repair, it should be pleaded. *Coal & Car Co.* v. *Norman*, 49 Ohio St. 598, 32 N. E. 857; *Malm* v. *Thelin*, 47 Neb. 686, 66 N. W 650; *Becker* v. *Baumgartner*, 5 Ind. App. 576.

The complaint before us shows that the servant complained of the defects, and that the master promised to remedy them. The promise relating to the defective appliances is alleged to have been a promise to repair within a reasonable time. The promise to remove the impeding material is stated as a general promise, no time of performance being designated in the making of the promise, so far as appears from the pleading. It is shown that the servant, while continuing in the service, was injured within six days after the promises, the service not being so imminently dangerous that a man of ordinary prudence would have refused to do so. It is alleged that he was induced so to continue to work by the promises, and that the injury occurred while he was so working, while the promises remained in force but had not been fulfilled, and that the servant at the time of the injury believed and had good

reason to believe that the master still intended to fulfil the promises. The pleading also denies contributory negligence. It is also alleged that sufficient time for the fulfilment of the promises had elapsed when, within six days after they were made, he was injured. We think that, under the authorities, the complaint must be regarded as sufficient, unless it can be said to be materially vitiated by this last mentioned averment, which it appears from a brief for the appellant was thought by the pleader to be necessary because of remarks in *Burns* v. *Windfall Mfg. Co.*, 146 Ind. 261.

In *McFarlan Carriage Co.* v. *Potter, supra,* we referred to the adoption in *Hough* v. *Railway Co.*, 100 U. S. 213, by the Supreme Court of the United States, per Mr. Justice Harlan, of the statement in Shearman and Redfield on Negligence, that there can be no doubt that when a master has expressly promised to repair a defect, the servant can recover for "an injury caused thereby within such a period of time after the promise as would be reasonable to allow for its performance," or "within any period which would not preclude all reasonable expectation that the promise might be kept." We declined to accede to the view that the complaint in such a case must show that the master had had a reasonable time after the promise and before the injury in which to make the repairs. The question whether the master had had a sufficient time to repair is not equivalent to the question whether the servant at the time of his injury had continued in the employment beyond the period which it was reasonable for him to allow the master to perform his promise and until such a period had elapsed that all reasonable expectation that the promise might be fulfilled was precluded.

Whether the servant has continued to work for an unreasonable time after the promise must vary according to the circumstances. The repairs may in one case require the manufacture of parts of a machine at a distant place, while in another case the necessary materials and needed workmen for the making of the repairs may be procurable immediately.

·Many evidentiary facts may be involved in the question. Whether an unreasonable period has been allowed must be a question of fact for the jury under proper instructions. The failure of the master for an unreasonable time to perform his promise does not go to his credit. He is "not in the exercise of ordinary care unless and until he makes the assurances good." Cooley Torts, 559. The allowance of an unreasonable time by the servant to the master in which to fulfil his promise precludes his recovery, according to the authorities, on the ground of assumption of the risk by the servant.

It was not necessary for the pleader to state that the servant had not allowed the master an unreasonable time. Having shown that he was serving under a promise of the master to repair, it would be matter of defense if he allowed too long a period. And we can not say as matter of law that six days was certainly too long a period of waiting.

In *McDonald* v. *Chesapeake, etc., R. Co.,* (Ky.) 5 S. W. 413, the complaint alleged that the defect of a want of a railing around a platform was known to the plaintiff before and at the time of his injury, and that he continued in the service to the date of his fall, on the assurance of the defendant that the defect or danger in the platform, or attending the work, would be made more secure within a reasonable time, and that the plaintiff had been working in the shop some three or four days before he fell from the platform. A demurrer to the complaint was sustained by the trial court, and this ruling was approved by the court of appeals of Kentucky, on the ground that the plaintiff did not aver that the defendant failed to make good its undertaking within a reasonable time; that it was not averred that a reasonable time had elapsed during which the platform might or could be made secure, but the court was left to infer that three days was a reasonable time in which to have the railing constructed. On petition for a rehearing in that case, the court reconsidered its former opinion, and held that the petition stated a cause of

action.   It was then said:   "The promise by the employer
to repair within a reasonable time after notice by the serv-
ant of the danger places the risk on the employer.   There
is no pretense that the appellant used the platform for such
a length of time as would evidence the belief that the em-
ployer intended to or had violated his promise to repair."

In *Ferriss* v. *Berlin Machine Works*, 90 Wis. 541, 548,
63 N. W. 234, the court instructed the jury that if the plain-
tiff, with knowledge of the defect, continued in the employ-
ment upon the faith of repeated promises of the defendant
to repair the defect, for a longer time than was reasonable to
allow the defendant to perform his promise or promises, then
the employe must be deemed to have waived the objection
and assumed the risk; and that whether, under the circum-
stances, he continued in the employment only a reasonable
time was mainly a question of fact to be determined by the
jury from all the facts and circumstances disclosed by the
evidence.   In this charge the court on appeal found no
error; and the jury having found that the plaintiff did not
continue longer than a reasonable time after he knew of the
defect, the court said it could not say that this finding was
not sustained by the evidence.   See, also, *Lyberg* v. *Northern
Pacific R. Co.*, 39 Minn. 15, 38 N. W. 632.

When the allegation in the complaint before us, that a
sufficient time for the fulfilment of the promises had elapsed,
is considered in connection with the averment that the prom-
ises remained in force, and that the plaintiff believed, and had
good reason to believe, the defendant still intended to fulfil
the promises, whatever may be conjectured as to the pur-
pose of the pleader, it cannot be supposed that it was in-
tended to allege the equivalent of an averment that at the
time of the injury all the time had elapsed that it was rea-
sonable for the plaintiff to allow for the performance of the
promises, or that such a period had elapsed as precluded all
reasonable expectation that the promises might be kept.

We think the motion in arrest should have been overruled.
Judgment reversed.