### EAST CHICAGO IRON AND STEEL COMPANY *v.* WILLIAMS.

[No. 2,400.    Filed May 21, 1897.]

MASTER AND SERVANT.—*Defective Machinery.—Assumption of Risk.*
—If a servant knows of a defect in machinery with which he is working, and notifies the master, and the master expressly or impliedly promises to remedy the defect by making necessary repairs, and the servant relies upon such promises and continues in the service, and within a reasonable time after the promise to repair has been made, is injured, he will not be held to have assumed the risk. *p. 575.*

SAME.—*Defective Machinery, When Risk Not Assumed by Employe.*—
If an employe accepts employment where he is to use defective machinery, and the defect is at the time known to the master, and is not disclosed to the employe, and the defect is of such a character

that it is not open to observation, and could not be discovered by the use of ordinary care, such employe does not assume the risk of the service.  *p. 576.*

From the Lake Circuit Court.  *Affirmed.*

*J. W. Youche,* for appellant.

*Peter Crumpacker* and *J. B. Peterson,* for appellee.

ROBINSON, J.—Appellee seeks to recover damages for injuries caused by appellant's negligence.

Appellant's counsel made application for a supersedeas, and filed a brief upon that application.  In that brief some of the errors assigned are briefly discussed, while others are simply mentioned, with the statement that they will be discussed in the regular brief to be thereafter filed.  As no regular brief was filed, the alleged errors not argued in the supersedeas brief are deemed waived.

It is argued that neither paragraph of the complaint states facts sufficient to constitute a cause of action.

Appellee was in the employ of appellant, and was engaged in operating certain rolls used for converting pig iron and other iron into what is known as merchant iron.  The first paragraph of the complaint proceeds upon the theory that the rolls were worn and out of repair, and the second paragraph, that the rolls were not only worn and out of repair, but that they were negligently constructed and put together.

It is argued that the specific allegations of the first paragraph show that the appellee had notice of the defective condition of the rolls, and that by continuing in the service assumed the risk.

The paragraph shows that the appellant, for thirty days before the accident, knew of the defective condition of the rolls, and that one week before the accident the appellee notified the appellant of their condition,

and threatened to quit work unless they were repaired, and that appellant promised to make the repairs within a reasonable time, and that, relying upon this promise, appellee continued in appellant's employ.

The general rule is, that a servant assumes all the ordinary risks of the service he enters.  And it is not enough that a servant, after he learns of the defect, simply notifies the master and continues in the service.  But if the servant knows of the defect, and notifies the master, and the master expressly or impliedly promises to remedy the defect by making necessary repairs, and the servant relies upon such promise and continues in the service, and within a reasonable time after the promise to repair has been made is injured, he will not be held to have assumed the risk.

"The employe who continues in the service of his employer after notice of a defect augmenting the danger of the service, assumes the risk as increased by the defect, unless the master expressly or impliedly promises to remedy the defect.  The promise of the master is the basis of the exception.  If the promise be absent the exception cannot exist." *Indianapolis, etc., R. W. Co.* v. *Watson*, 114 Ind. 20; *Rogers* v. *Leyden*, 127 Ind. 50; 3 Elliott, Railroads, section 1296 and cases cited; *Romona Oolitic Stone Co.* v. *Phillips*, 11 Ind. App. 118; *Indianapolis Union R. W. Co.* v. *Ott*, 11 Ind. App. 564; *Hough* v. *Railway Co.*, 100 U. S  213.

The second paragraph of the complaint proceeds upon the theory that the rolls at which appellee was working when injured were defective, in this: that at the time the rolls were put up the appellant wrongfully, willfully, and negligently put in two rolls for the middle and top rolls that were exactly of the same size; that the injury was caused by reason of this de-

fective construction; that the appellee did not know of the defects in said rolls and the improper construction thereof, and could not know or ascertain the same by an inspection or by observation of said rolls; that the difference in size of rolls could only be ascertained by the use of an instrument for that purpose, which could not be used after the rolls were set up and in position to operate; that it was possible to test them only while they were out of position; that appellant had tested said rolls before putting them in position and knew of their condition and construction.

If an employe, when he accepts employment, knows that he is to work with defective machinery, he assumes the risk of the service. And although he may accept employment where he is to use defective machinery, and the defect is at the time known to the master and is not disclosed to the employe, if the defect is of such a character that it is equally open to the observation of the employe and the master, they will be held to stand on a common footing, and in accepting such employment, the employe assumes the risk. But this rule does not apply where the defect is not open to observation, and where it could not have been discovered by the use of ordinary care.

"It is the theory of the decisions that the servant takes the risk only of what may be denominated 'seen dangers,' but by this is understood nothing more than that a servant is entitled, when there is any danger connected with the machinery or employment in which he is engaged, and which ordinary inspection and carefulness on his part will not enable him to avoid, to have it distinctly announced to him. It is meant that, as to such danger, it is particularly the duty of the employer to warn him. He is plainly entitled to have them pointed out when he enters upon the service. When this is done in good faith they be-

East Chicago Iron and Steel Company *v.* Williams.

come a part of his contract, but for any failure in this regard, when injury ensues, the master is liable." Beach Contr. Neg., section 359; *Salem Stone, etc., Co.* v. *Griffin,* 139 Ind. 141.

Appellant's counsel say that the special verdict is insufficient to justify the judgment. The objections to the verdict as stated in appellant's brief are: First, that it fails to show appellant had any knowledge, or was aware of the fact that the rolls complained of were defectively constructed, or out of repair; second, that appellee ever notified appellant prior to his injury that the rolls were out of repair, or that appellant promised to repair them; third, that the verdict shows that the appellee was, at the time of the accident, and had been for six months prior thereto, perfectly acquainted and familiar with the construction and condition of the rolls; and fourth, that the verdict shows that the injury was occasioned by one of the ordinary risks of the employment.

These are the only objections made to the special verdict, and appellant's brief contains only a statement of the objection. The verdict is quite lengthy, and it is not necessary that it be set out in full. That appellant's objections are not well taken is apparent from the following statements in the verdict: "That the said eight-inch mill above described in said defendant's manufacturing plant, were not repaired, nor the edges of said grooves ragged, nor the fillets therein dressed, nor the shoulders on the grooves turned up, for the time aforesaid, and they were by constant use, worn out and beaten down, as above described, became and were for a period of three months before the 31st day of May, 1894, greatly out of repair and more dangerous for the roughers to work with and about. * * * * That the said roller so put into said mill,

as aforesaid, was turned down and put in by the direction and with the full knowledge of the said John Morgan, and of the said Robert Ross, and the defendant, and the said work in so turning down the said roller and putting it into said mill was done by the employes of defendant in defendant's said manufacturing plant, and the said defendant had full knowledge of the fact of its said defective condition, and of the fact that it was of the same size as the said upper roller.  *  *  *  *  That during all of said time, from the 1st day of January, 1894, until the 31st day of May, 1894, said defendant, by the exercise of reasonable care and diligence, might have known, and as a matter of fact did know, of the defective condition of said mill, and of the fact that said rollers and the grooves therein were out of repair, as aforesaid.  *  *  *  * That the defendant, from December, 1893, all the time to May 31, 1894, had sufficient and ample means of knowing, and might have known, and did know, all said time of the defective and dangerous condition of said mill.  *  *  *  *  That about one week before said injury, plaintiff complained of the defective condition of said grooves, fillets, and shoulders to defendant, and asked defendant to repair the same, and threatened to and was about to quit defendant's service unless the said rollers were repaired in said respects, and so informed defendant at the time, and defendant, through its officers and agents, said Ross and said Morgan, at said time, promised plaintiff that it would put in new rollers in the place of said worn and defective ones, or would repair the said defective rollers within ten days thereafter.  That the said Ross and the said Morgan had the right, at said time and at all times, to make said promise for the defendant and were authorized by it, and were each acting for the defendant in making said promise, and all promises

made as found herein, and that plaintiff relied on said promise, and by reason of it continued to work for defendant, and in its employment, until his injury complained of.  The plaintiff would not have continued in defendant's employ, and would not have continued to work upon and about the said rolls, as aforesaid, and would not have been injured except for the said promise made by the defendant to him, as aforesaid.
* * * *  That while it was a fact that the upper and middle rollers were of the same size, yet it was not possible for a person by looking at the said rollers to tell that the upper one was not as large as it should have been, to-wit:  One-eighth (1-8) of an inch in diameter larger than the middle rollers.  That this fact could be ascertained only by measuring the diameter of the said rollers with an instrument called 'calipers;' that while the said rollers are in their proper position in the mill, it is not possible to measure them without instruments especially made for this purpose. That plaintiff had no such instruments, and did not know and by the exercise of reasonable diligence, could not discover that the rollers were not constructed as they should have been with regard to size. That he had never seen said rollers when they were out of their position in the said mill; that not knowing the condition of said rollers as to size, he was not aware and not informed of the extent of the danger to which he was exposed while so using said mill.
* * * *  The said billet, because of the defective condition of the said rollers, and their being of the same size, and because of the defective condition of the grooves in said rollers, and because of the ragging on the grooving having been worn out, and because the fillets were worn out, and the shoulders beaten down and out of repair, and slight grooves thereon, the said billets while intensely hot, and while passing

through the said roller, curled and wrapped around the upper roller, and while the said roller was revolving, the said billet formed a collar, thereon, and instantly exploded and flew in a great number of small pieces."

Appellant's counsel has not argued in the supersedeas brief any of the questions arising on the ruling on the motion for a new trial, but states that these questions are reserved for the general brief. As no general brief has been filed, these questions are not presented under the rules of practice. *Louisville, etc., R. W. Co.* v. *Miller,* 140 Ind. 685.

Finding no error in the record, the judgment of the circuit court is affirmed.