### Barnett & Record Company v. Casper Schlapka.

1. MASTER AND SERVANT—*Master's Duty to Furnish Servant with a Reasonably Safe Place in Which to Work.*—It is the master's duty to exercise reasonable care to make the place reasonably safe for the employes whom he sets at work therein so far as is reasonably consistent with the work they are set to do.

2.   SAME—*What Risks the Servant Assumes.*—The risks the servant assumes are only such risks as remain incident to the employment after the master has exercised reasonable care to provide a reasonably safe place wherein the servant may perform the work he is hired to do.

3.   SAME—*Servant May Assume that the Place Where He is Directed to Work is Reasonably Safe.*—The servant is not primarily required to make a critical examination of his surroundings at the place where he is required to work, but may assume that they are fit and safe.

4.   DAMAGES—*Damages May Be Had for the Whole Extent of Injury Although Not Averred in Declaration.*—If the injury be alleged, recovery may be had for the whole extent thereof, though not averred in the declaration.

5.   INSTRUCTIONS—*That Servant Has No Right to Rely upon Master's Assurance that the Place Where He is to Work is Safe, Erroneous.*—An instruction that if the servant has equal means and capacity with the foreman of knowing the condition of the place where he is to work, then he has no right to rely upon the foreman's assurance that it is safe, is erroneous.   The law does not require him to exercise his means of knowledge and capacity, but he may rely upon both the performance by the master of his duty and the assurance of the foreman, that the place was safe.

Trespass on the Case, for personal injuries.   Appeal from the Circuit Court of Peoria County; the Hon. NICHOLAS E. WORTHINGTON, Judge presiding.   Heard in this court at the April term, 1903.   Affirmed. Opinion filed October 8, 1903.

STEVENS, HORTON & ABBOTT, attorneys for appellant.

H. S. MILLER and WILLIAM S. KELLOGG, attorneys for appellee; JOSEPH A. WEIL and E. J. SLOUGH, of counsel.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

In July and August, 1901, the Barnett & Record Company, a corporation, was erecting an annex to the Iowa elevator at Peoria.   As a part of that work an excavation was dug in the earth from the annex to the elevator to form a tunnel through which grain was to be conveyed.   It was about thirty-five feet long, eight feet deep and twelve feet wide at the bottom, with sides sloping so that it was two or three feet wider at the top.   In the bottom of this ditch, or tunnel, a trench was dug on each side in which a concrete foundation was to be laid for the permanent side

walls of the tunnel. When the trenches were dug temporary boxes in which to receive the concrete were formed by placing boards, or strips of boards, on each side of each trench. These trenches seem to have been three feet wide and eighteen inches deep, though the superintendent stated other dimensions. The upper part of the material through which the ditch was dug was made ground, which had been dumped there and packed, and which had become tough, so it hung together; lower down the ditch was cut through looser material, and at the bottom it was sand. Prior to August 6th the ditch had been completed, and the trenches at the sides were then being dug for the foundations of the walls. Two railroad tracks passed over this tunnel at the surface of the ground. There was a permanent I-beam under each rail, and each I-beam was supported by two upright posts, each about six inches inside of where the tunnel wall was to be built, and each resting on a mud sill set in the bottom of the ditch. These posts were tied together in one direction and braced in the other. The temporary work had been completed by August 7th, so that for three days before that date trains of cars had been run across these tunnels in the night and in the early morning before the men went to work in the ditch. The passage of these trains tended to loosen the soil in the sides of the tunnel. In the afternoon of August 6th Casper Schlapka began work for the company as a common laborer, and dug a short time in another ditch, but worked most of that afternoon handling stone above ground. In the forenoon of the next day, by direction of his foreman, he went into the ditch above described and began shoveling dirt or sand out of the trench. In a short time thereafter he was outside of the ditch, at or near the mouth of the tunnel. Why he was there is disputed. Brown, the carpenter, who was making the concrete boxes, was going into the tunnel, carrying a plank. Brown asked or directed Schlapka to carry one end, which he did, walking in the trench. This was only ten or twenty minutes after he was first sent into the trench to work. When he was near, or

Barnett & Record Co. v. Schlapka.

under one of the railroad tracks, the side of the tunnel caved in upon him, and he was covered with the earth and thrown against an edge of a concrete box, and received a fracture of the surgical neck of the right femur. He brought this suit against his employer to recover damages for the injuries so sustained.

The declaration charged that defendant negligently shored, propped and braced the sides of the tunnel in a manner which was insecure, unsafe and dangerous, and, in another count, that defendant had partially and negligently excavated the tunnel, and that it was an unsafe place in which to work. It was averred that plaintiff became an employe of defendant; that plaintiff was unskillful and inexperienced in such work, and did not know the excavating, propping and bracing, had been performed in an insecure, unsafe, dangerous and negligent manner; that he was assured by defendant's foreman that said ditch was a safe place in which to work without danger; that plaintiff relied upon such assurance, and by order of the foreman went to work in said ditch or tunnel, and while so at work, and using due care for his personal safety, and without knowledge, or reasonable means of knowledge, that said tunnel was an unsafe place in which to work, the sides and banks, by reason of their insufficient propping, shoring and bracing, and by reason of their careless and negligent construction, gave way, caved in and fell on plaintiff, and he was thereby greatly hurt and wounded, and became sick, lame and disordered, and so remained from thence hitherto, and suffered great pain, and was prevented from transacting his affairs and business, and was forced to lay out divers sums in endeavoring to be cured. Defendant pleaded the general issue. There was a jury trial, and a verdict and judgment for plaintiff for $3,760, from which defendant appeals. Defendant urges that the caving in was an accident; that plaintiff assumed the risk thereof; that he was injured after warning, and while disobeying an order to keep out of the trench, and while obeying an order, or request of a fellow-servant, not binding on

defendant; that the damages are excessive; and that the court erred in rulings upon instructions.

Tamm was defendant's superintendent, and Eckley was foreman of this work. Plaintiff and two other witnesses testified that when plaintiff was ordered to go to work in the ditch he questioned the foreman as to the safety of the place, and whether it was solid, meaning, obviously, whether the bank was solid, and that the foreman assured him it was safe and solid. Plaintiff had another witness who testified to a similar statement by the foreman to plaintiff shortly before the bank caved in. Eckley denied that he made such a statement. We are asked to say these three witnesses were unworthy of belief because they testified either that there were no supports in the ditch for the railroad tracks or that they did not see any, whereas there were such supports there. The ditch seems to have been covered in part by a roof, at least it was dark in one end. Some of these witnesses had only worked there a short time. Some had evidently paid little attention to the surroundings. But they were disinterested, and the jury saw and believed them. Besides, if the testimony of those three had been rejected by the jury, they still had a right to believe plaintiff against the foreman. There was nothing unreasonable in plaintiff's testimony. We find nothing in the condition of the proof on this subject which would warrant us in reversing this verdict on the ground the jury should have believed the foreman against three or four witnesses on the other side. On the contrary, the record requires us to assume it was proved that when plaintiff was ordered into the ditch he inquired of his superior officer as to the safety of the place, received from the foreman assurances of its safety, and went into the ditch and went to work in the trench in reliance upon these assurances. There were several circumstances in evidence tending to show it was not safe, and that defendant's foreman and superintendent knew it. Defendant had already shored or braced one side of part of the ditch, but not where plaintiff was set at work. This indicated defendant feared it might

cave in and hence took that precaution. Defendant was at the same time digging another like tunnel about twenty-five feet from this one, in the same kind of soil, under the same general conditions, running in the same direction from the annex to the elevator, and crossed by the same railroad tracks. That bank caved in three days before the injury to plaintiff. The trains crossed in the night by arrangement of defendant's superintendent, and their motion and weight had a tendency to loosen the dirt in the upper part of the ditch, and the superintendent and foreman knew it. Before the injury the foreman had, as he testified, taken very particular pains to go upon the top of the bank and look around to see if there were any cracks about it. These cracks were the first indications of caving, and such cracks were discovered on top of this bank five or ten minutes before the bank gave way. The fact the foreman was on top looking for cracks shows he feared there was danger it might cave in. There were other circumstances in proof tending to show the men in charge of the work feared the ditch might cave in. The jury were warranted in finding it was not safe to dig in the trench, and that the superintendent and foreman knew it. Plaintiff did not know the other ditch had caved in, nor is there any proof he knew that trains passed over the ditch in the night, nor that their motion tended to loosen the sides of this tunnel. He was not where he could see or watch for cracks in the surface. He did not know the place was unsafe. It was defendant's duty to exercise reasonable care to make the place reasonably safe for its employes whom it set at work therein, so far as was reasonably consistent with the work they were set to do. The so-called " wrecking cases " cited, where men were employed to pull down the walls of old buildings, or walls left after a building had been destroyed by fire—work necessarily unsafe in some degree—are not in point here. It is not necessary that such a ditch or tunnel shall cave in. Plaintiff was not employed to assist in causing the ditch to cave in.

Defendant introduced evidence tending to show that

while a sewer ditch could be shored, this ditch could not, because such shoring would interfere with the trenches and concrete foundations to be placed therein, and that it was not customary to shore or brace the sides of such ditches. It is manifest the view taken by defendant's witnesses on this subject was not conclusive upon the jury. Defendant had shored part of this ditch. That proved it could be done. When the superintendent discovered danger of caving at that point he instantly gave an order to shore it up, and Brown went for a plank with which to shore or brace it, showing that in actual practice that was the natural thing to do. It is true if defendant undertook to shore the ditch from the bottom, the ditch would have to be wider than from the outside of one wall to the outside of the other, so that the shore timbers could be set outside the foundations for the walls, and if the sides were braced in the middle of the bank the workmen would have to stoop to pass under the braces. But there was no showing these things could not be done. They would only cause additional expense or inconvenience. But it is also obvious that with but little more expense the sides of the ditch could have been given a greater slope, and thus all danger of caving in could have been avoided.

The risk the servant assumes is only such risk as remains incident to the employment after the master has exercised reasonable care to provide a reasonably safe place wherein the servant may perform the work he is hired to do. The rules of law governing the relation of master and servant, where there is or may be overhanging danger, are stated and illustrated in Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill. 573; Ill. Steel Co. v. Schymanowski, 162 Ill. 447; City of LaSalle v. Kostka, 190 Ill. 130, and Western Stone Co. v. Muscial, 196 Ill. 382. That the servant is not primarily required to make a critical examination of his surroundings at the place where he is directed to work, but may assume they are fit and safe, is the doctrine, not only of several of the cases above cited, but also of Ross v. Shanley, 185 Ill. 390, Wrisley Co. v. Burke, 203 Ill. 250,

and many other cases. In determining what risks plaintiff assumed, and whether he exercised due care, it is also to be noted that he had never worked in such a trench till August 6th, and only for a short time that day; that he had never been in this ditch till ten or twenty minutes before he was injured (Supple v. Agnew, 191 Ill. 439), and also that the preponderance of the proof is he entered upon the assurance of his foreman that the place was safe and solid.

Brown, the carpenter who had charge of making the concrete boxes, testified he noticed sand moving at the bottom of the trench and a crack in the bank, and stated it to some one, and the superintendent got down into the ditch and ordered the men to stop work till the bank was secured. The superintendent testified that upon learning of danger he came into the ditch, and ordered the men out of the trench (not out of the ditch or tunnel), and ordered that the side that was in danger of caving in be shored up. Plaintiff testified he did not hear any such orders. He testified that after he had dug in the trench a few minutes there were more men in the trench than were needed and he went outside upon the bank and shoveled away dirt or sand the others were throwing up there from the bottom, and shoveled there about five minutes; that then Brown came along and told him to take hold of one end of the plank and carry it into the tunnel and he did so. Plaintiff and his witnesses testified this plank was to be used for one side of the concrete box. Defendant's witnesses testified it was to be used to shore up the dangerous places. Brown testified it was inconvenient for him to carry in the plank alone, and that he made this request of plaintiff in the presence of the superintendent, who was standing a little further in the tunnel. The superintendent admitted plaintiff passed him, carrying one end of the plank. Plaintiff was then walking in the trench. The foreman crawled under the plank while Brown and plaintiff were carrying it. Neither the superintendent nor the foreman made any objection to the act of plaintiff in helping to carry

the plank.  Plaintiff was assisting in getting the material
with which to do the shoring  the superintendent had
ordered.  According to one of plaintiff's witnesses, when
plaintiff got in with the plank, plaintiff was ordered to
shovel out a little corner of the trench where this plank
was to be placed in the concrete box, and while so shovel-
ing the bank caved in upon him.  According to other wit-
nesses the bank gave way when plaintiff was carrying the
plank just as he was at the place where he had been dig-
ging.  Some one called "Look out," just as the bank caved
in, and too late for plaintiff to escape.  The superintendent
and the foreman and Brown were in the ditch, and con-
sidered it safe anywhere in the ditch except in the trench.
If plaintiff was not in the tunnel when the order was given
by the superintendent and did not hear it, then he did not
disobey it.  If he did hear it, still the superintendent and
foreman, by their silence, acquiesced in his act of helping
to carry in the plank.  Defendant proved it was the duty
of any laborer to assist in shoring up if called upon to do
so.  The examination of the superintendent by defendant
contains the following :

" Q.  Whose duty was it, in working in the trench
there, to do the shoring or sheathing in the trench?  A.  It
was the duty of any one who was called upon to do it; that
all depended upon the nature of the shoring.  Q.  What
had the men who dug in the trenches, or who did dig in
the trenches, to do with taking care of the sides to prevent
them caving, if anything?  A.  They would handle the
stuff, carry it in, help bring it to place and help put it in
place."

If, therefore, plaintiff heard the superintendent's order,
which the superintendent on cross-examination testified
was to stop working and shore the sides, then plaintiff was
in the exact line of obedience to his superior in helping
carry in this plank and in getting into this trench with the
plank at that point, where it was obviously necessary some
one must be in order to put the plank against the bank in
position for shoring.  The proof warranted the jury in
finding plaintiff was not injured because of disobedience to

orders, and was not a mere volunteer in helping to bring in the plank.

Plaintiff was in the hospital seven months because of the injuries he sustained in this ditch. He need not have been there all that time, but he was necessarily under medical and surgical care which could be better administered there than elsewhere. He suffered serious pain for a while and still suffers at times. He incurred heavy medical and hospital bills. He was able to earn $10 a week before this injury. He is forty-six years old. He has not been able to do any work since. His right leg is partially paralyzed as a result of being caught under the bank. His physicians testified they believed his injuries permanent and that he would not be able to perform manual labor again, though they said they were not certain of this. We can not say that the verdict is so out of proportion to the injuries inflicted that we ought to set it aside.

The first instruction given at plaintiff's request was in part to the effect that if plaintiff put himself in a position of danger in obedience to an order by defendant's officer, said officer knowing the danger of obeying said command, then if plaintiff had some knowledge of the danger, that knowledge by plaintiff would not defeat a recovery, if in obeying the order plaintiff acted with care, prudence and diligence. Defendant's brief here admits this correctly states the law, but insists it was not applicable because it ignored the alleged fact that the injury did not result from obedience to the original order to go to work in the trench, but because plaintiff re-entered the trench at the request of a fellow-servant after being ordered out of it by the superintendent. This instruction did not undertake to state what facts would authorize a recovery. It was not directed to that subject. The doctrine of the instruction was that the servant will not be defeated by some knowledge of danger, if he goes into the place of danger by direction of a superior who knows of the danger, and if the servant uses ordinary care. We need not repeat the evidence already recited. If plaintiff did not hear the order to get out of the trench,

then the original order would justify his acting upon the assumption the place was still safe when he went in with the plank ten or twenty minutes later, if in so returning he used ordinary care. If plaintiff heard the superintendent's order to stop working and shore the sides, then he was obeying it in carrying in the plank and going into the trench with it at the point where the shoring was to be done, and the instruction was properly applicable to that order and to his being injured while obeying it.

It is said plaintiff's third and fourth instructions were erroneous in permitting a recovery for permanent injuries, because permanent injuries are not averred in the declaration. The rule is that if the injury be alleged, recovery may be had for the whole extent thereof, though not averred in the declaration. City of Chicago v. Sheehan, 113 Ill. 658; Chicago City Railway Co. v. Hastings, 136 Ill. 251; C. & A. R. R. Co. v. McDonnell, 194 Ill. 82.

The court modified defendant's fourth and eighth instructions by inserting "having due regard to the safety of the plaintiff." The instructions as drawn submitted the question whether the order given by defendant to assist in shoring the bank was reasonable, and such as a reasonably prudent man would have given under the circumstances. It is argued defendant owed no greater duty to this servant than to any other, and that it was error to emphasize defendant's duty to plaintiff as distinct from its general duty. The argument seems to concede the modification would have been proper if it had read, "having due regard to the safety of defendant's servants, including plaintiff." But the question litigated related to defendant's duty to plaintiff, and not to its other servants. We think it was proper to indicate that in giving such an order the safety of plaintiff was not to be ignored. Defendant's eleventh instruction was to the effect that if plaintiff's injury was the result of an accident, without the fault of either plaintiff or defendant, plaintiff could not recover. The court inserted the words, " and that could not have been reasonably foreseen." An injury which could not be reasonably

Barnett & Record Co. v. Schlapka.

foreseen is an accident. The modification was unnecessary, but added nothing but a definition. We think the jury must have understood.it to mean " and that could not have been reasonably foreseen by plaintiff and defendant." We can not assume the jury would apply it to one party only. We fail to see that this modification could have misled the jury or injured defendant.

The court inserted the words "and capacity" in the ninth instruction offered by defendant, and gave it as follows :

" You are instructed that even if you believe from the evidence that when Schlapka commenced to work at the place in question, the foreman of the defendant expressed an opinion that the side of the tunnel was safe, yet, if you further believe from the evidence that Schlapka had equal means and capacity with such foreman of knowing the condition of the bank or side of the tunnel, and the danger therefrom, then he had no right to rely upon such opinion, the law being that one of the essentials for the plaintiff to prove is, that he did not have equal means of knowing the danger as the defendant, and unless the plaintiff has so proven in this case you should find the defendant not guilty."

We are of opinion this instruction as offered was improper and should have been refused. When a servant goes into a new place to work and is assured by his foreman, the representative of the master, that it is safe, he is not required to make any investigation to determine for himself whether it is safe. The fact he may have means of ascertaining whether there is danger does not require him to put those means into exercise to ascertain its condition. In such a case he may not only rest upon the assumption his master has performed his duty to use reasonable care to see that the place wherein he puts his servant to work is reasonably safe for him, but he may also rely upon the assurance of his foreman. What the servant's duty would be if he actually discovered danger is a question not involved in this instruction. The modification was unfortunate, for where a servant's means, or lack of means, of knowledge of the condition of his sur-

roundings and of the danger therefrom determines his right to recover for an injury, it is not true he must have equal capacity with his foreman for knowing the conditions and the danger in order to defeat a recovery. But in the case stated in the instruction, the mere means of knowledge possessed by the servant would be immaterial, whether his capacity of knowing the conditions and danger was great or small, or equal to or greater or less than that of the foreman. Even if plaintiff had equal means and capacity with the foreman for knowing the conditions and the danger, still the law did not require him to exercise his means of knowledge and capacity, but he still might rely both upon the performance by the master of his duty and upon the assurance given by the foreman. The instruction as modified was still too favorable to defendant, and we do not see that defendant could have been harmed by it. Several of defendant's given instructions were too favorable to defendant and ignored rules of law protecting a servant under the circumstances in proof in this case.

We find no reversible error in this record. The judgment is affirmed.