## Chicago & Bloomington Stone Company v. Nelson.

[No. 4,406.   Filed January 29, 1904.]

Parent and Child.—*Action for Death of Child.—Desertion by Father.— Action by Mother.*—The right of a mother to maintain an action for the death of her son, the father having deserted his family, is not a question of capacity, but a question of right conferred by statute (§267 Burns 1901) upon the wife and mother under the conditions named. *p. 359.*

Same.—*Death of Child.—Right of Mother to Maintain Action.—Pleading.* —The right of a mother to maintain an action for the death of her son upon the desertion of the husband and father of his family is an issuable fact which should be averred in the complaint and proved. *pp. 359, 360.*

Master and Servant.—*Assumption of Risk.*—A servant assumes not only the ordinary dangers of his employment which are known to him, but also such as by the exercise of ordinary diligence could have been known to him. *p. 361.*

Same.—*Assumption of Risk.—More Hazardous Work.—Complaint.*—A complaint against the master for the death of a servant which proceeds upon the theory that deceased, at the time of the injury resulting in his death, was under orders of the master, engaged in service more hazardous than that of his regular duties, and therefore did not assume the risks incident thereto, must allege that decedent had no knowledge of the danger which confronted him and caused his death. *pp. 361, 362.*

From Owen Circuit Court; *M. H. Parks*, Judge.

Action by Parlie Nelson against the Chicago & Bloomington Stone Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*H. C. Duncan, I. C. Batman* and *Willis Hickam*, for appellant.

*J. E. Henley, J. B. Wilson* and *Seymour Riddle*, for appellee.

Wiley, P. J.—Action by appellee against appellant for the negligent killing of appellee's minor son. Appellant filed a plea in abatement, which, on appellee's motion, was stricken out. The plea in abatement, motion to strike

out, and the ruling of the court thereon are brought into the record by bill of exceptions. Answer in denial, trial by jury, verdict and judgment for appellee. With the general verdict the jury returned answers to interrogatories, and appellant's motion for judgment on the answers to interrogatories notwithstanding the general verdict was overruled. Appellant also moved for a new trial, and this motion was overruled. A demurrer to the amended complaint was also overruled, and all of these adverse rulings are assigned as errors. James Nelson, the husband of appellee, was made a party defendant, service had upon him by publication and he was defaulted.

The complaint, which is in one paragraph, avers that appellant was engaged in the quarrying, mining, and manufacturing and selling stone; that plaintiff was the wife of James Nelson, who had abandoned his family, and for two years had failed to contribute to their support; that on the 25th day of August, 1899, appellee's oldest son, Pleasant, was in the employment of appellant, and had been in such employment prior thereto as water boy, engaged in carrying water for other employes to drink; that on that day he was fourteen years of age, and that all of the wages he earned by his employment to appellant were turned over to appellee to assist in the support of her family, and that her said son was the principal support and the only source of income to her; that, in operating its quarries, appellant had a large amount of machinery, including derricks, steam power, masts, booms, chains, hooks, etc.; that attached to the mast near the bottom was a large and heavy piece of timber, commonly called a derrick boom, which extends out thirty or forty feet, and which is so constituted that the end farthest from the mast, by force of steam power, may be raised and lowered, turned to the right or left, at the direction of the manager of the derrick; that on the end farthest from the mast are fastened heavy chains, with hooks, which

hooks are commonly called "dogs;" that in all properly constituted derricks said dogs are sharp on the end, and so arranged that when loaded the points of the hooks clinch the load thus upon them by the natural weight of the load and arrangement of the hooks; that said derricks, as so arranged, are used for the purpose of moving stone in and about the yards, but in the yards of appellant at said time the power-house was so arranged that the employes of the power-house were not in view of the employes at the derrick; that at that time and place appellant had a large number of men at work, some of whom were engaged at the power-house, and some at the derricks, and it was necessary, in order that those in the power-house should know when to apply power, that an employe should be stationed between the derrick and the power-house to give the signal from the derrick-yard to the power-house for the application of the power, or the withdrawal of the power, at the will of the derrick boss.; that said signal was always given at the command, and under the direction, of the derrick boss, who first made a signal to the signal boy, when the latter was to repeat it to the power-house; that appellant, being in need of a signal boy, changed the work of appellee's son from water boy to signal boy; that the position of signal boy in a stone quarry is much more dangerous than that of water boy, but that said fact was unknown to appellee's son, and was well known to appellant; that on August 25, 1899, appellee's son was in the line of his duty, and stationed upon one of the signal stations of appellant, and, while so stationed, appellant, through its carelessness and negligence, moved one of the derrick booms of its quarry in such a manner as to set the dogs on and hold of a large, heavy stone in the derrick yards, and, instead of lifting said stone from the ground, in order to move it, as was the proper way of moving stones, carelessly and negligently dragged said stone upon the ground, and be-

fore attempting to drag the same had negligently and carelessly taken hold of said stone with said dogs; that, in the proper manner of moving stones with said derrick, holes are cut in the opposite sides of the stones in which to place the points of the dogs; that in the stone being moved the holes were improperly and carelessly made, and did not give sufficient hold to the dogs, and that, as appellant proceeded to drag the stone on the ground, it was pulled against another large stone, which made it impossible to be pulled farther by the hold had upon it with the dogs, but that appellant continued, carelessly and negligently, to pull upon the stone until the dogs slipped from their hold, and flew with great force through the air toward the signal station upon which appellee's son was standing, and, without warning, or without giving him an opportunity to change his position, struck him and threw him violently to the ground, upon stones, so injuring him that he died two hours thereafter; that at appellant's quarries, where said boy was working, there were two large derricks, and that a signal boy was employed for each derrick; that the derrick which killed appellee's son was a different one from the one for which he was acting as signal boy, and one with which he had no connection whatever; that each derrick had a separate crew of men, and a separate manager, known as derrick boss; and that said derricks were so located that each was in reach of the other, and were worked and used upon the same yards.

The first question discussed by counsel arises under the ruling of the court striking out appellant's plea in abatement. In the pleading called "a plea in abatement" it is averred that James Nelson, mentioned in the complaint as appellee's husband, was not, at the time of the commencement of the action, dead or in prison, but that he had deserted his family. It was on this ground alone it was asked that the action abate until the facts charged

could be adjudicated and finally determined. At common law, an action for the death of a minor child did not survive in favor of the parent or parents. It is now only by virtue of the statute that such action can be maintained, and primarily the right to sue is given alone to the father. This right is based upon the fact that the father is entitled to the services and earnings of his minor child.

Section 266 Burns 1901 provides: "When a husband or father has deserted his family, or is imprisoned, the wife or mother may prosecute or defend, in his name, any action which he might have prosecuted or defended, and shall have the same powers and rights therein as he might have had." Section 267 Burns 1901 is as follows: "A father (or in case of his death, or desertion of his family, or imprisonment, the mother) may maintain an action for the injury or death of a child." This statute, upon the condition named, vests in the mother the right to prosecute an action for the injury or death of her minor child. Section 368 Burns 1901 provides: "Pleadings denying the jurisdiction of the court, or in abatement of the action, and all dilatory pleadings, must be supported by affidavit. The character or capacity in which a party sues or is sued, and the authority by virtue of which he sues, shall require no proof on the trial of the cause, unless such character, capacity, or authority, be denied by a pleading under oath, or by an affidavit filed therewith."

Counsel for appellant contend that under this statute they can not test appellee's capacity to sue, except by a plea under oath, and that the issue upon that plea should have been so determined. We think counsel are mistaken. It is not a question of capacity, but a question of right conferred by statute upon the wife and mother under the conditions named. Under these statutes the wife and mother has the same right to prosecute an action of this character

as the husband or father, when her right rests upon the fact that the husband and father is either dead or in prison or has deserted his family. To exercise this right, it is essentially necessary for her to bring herself within one or more of the provisions of the statute, and this she has done by the averments in her complaint. In this case appellee bottomed her right to prosecute this action upon the fact that the husband and father had deserted his family. This was a substantive and issuable fact, and, to maintain her right to sue, she was required to prove it. A plea in abatement is one in which is set up matter tending to defer or suspend the suit or proceeding in which it is interposed, but which does not debar the plaintiff from re-commencing another action at some other time or in some other way. 1 Enc. Pl. & Pr., 1. Under this recognized definition of the term "plea in abatement" it is clear that the pleading so designated by appellant, and stricken out on motion, was not such a plea, but an answer in bar. There was no error in sustaining the motion to strike out.

The next question in the order of discussion is the one which arises upon the action of the court in overruling the demurrer to the complaint. The complaint is a common law count to recover damages for the alleged negligent killing of appellee's son, and is not drawn upon the provisions of the employers' liability act of 1893. It charges appellant with two acts of negligence, in this: First, that it required appellee's son to cease his duties as water boy, and directed him to perform the duties of signal boy—the latter position being a more dangerous one than the former, and so known to be by appellant, of which fact the deceased was ignorant; second, the manner in which appellant, by its servants, undertook to move a heavy stone, bringing it in contact with another heavy object, and applying sufficient force, through its derrick and ropes, to pull the "dogs" from their hold upon the stone, which

caused them to fly against the deceased, by which he was killed.

An employe in a case of this character assumes all the ordinary dangers and risks incident to the employment, which includes obvious dangers and risks of which he has knowledge, or of which, by the exercise of ordinary care, he could have known. These are propositions of law about which there seem to be no controversy. It is necessary, therefore, for the complaint in such case to state facts showing that the injured party did not assume the risk. *American Rolling Mill Co.* v. *Hullinger*, 161 Ind. 673. An employe assumes not only the ordinary dangers of his employment which are known to him, but also such as by the exercise of ordinary diligence could have been known to him. *Pennsylvania Co.* v. *Ebaugh*, 152 Ind. 531; *Linton Coal, etc., Co.* v. *Persons*, 15 Ind. App. 69.

The doctrine of assumption of risk on the part of the employe rests upon his knowledge of the dangers incident to his employment, and this includes the dangers which he might have known by the exercise of ordinary care and diligence. It has many times been ruled that in the class of cases we are now considering it is essential, in order to make a good complaint, to aver that the injured party had no knowledge of the danger. *Peerless Stone Co.* v. *Wray*, 143 Ind. 574; *Louisville, etc., R. Co.* v. *Sandford*, 117 Ind. 265; *Big Creek Stone Co.* v. *Wolf*, 138 Ind. 496; *Louisville, etc., R. Co.* v. *Corps*, 124 Ind. 427, 8 L. R. A. 636; *Brazil Block Coal Co.* v. *Young*, 117 Ind. 520; *Wabash, etc., R. Co.* v. *Morgan*, 132 Ind. 430; *New Kentucky Coal Co.* v. *Albani*, 12 Ind. App. 497; *Cleveland, etc., R. Co.* v. *Sloan*, 11 Ind. App. 401; *Lake Shore, etc., R. Co.* v. *Kurtz*, 10 Ind. App. 60.

In *New Kentucky Coal Co.* v. *Albani, supra*, this court said: "The servant's knowledge or want of knowledge must be specially alleged, because upon this it depends

whether or not he is to be held to have assumed the risk, * * * assumption of the risk and contributory negligence being separate and independent factors."

As far as the complaint goes in this case is to the extent of averring that the place to which appellee's son was sent to work was more dangerous and hazardous than the position he had formerly occupied, and that he was ignorant of the increased danger. There is no averment in the complaint to the effect that he did no know the place was dangerous. The complaint no place negatives his knowledge of the danger. The averment that the position of signal boy was more dangerous than that of water boy, and that the deceased was ignorant thereof, falls short of an allegation that he had no knowledge of the danger. Neither is there any allegation that he had no knowledge of the danger that confronted him from the operation of the derrick in moving the stone in the manner described by the complaint. Under the uniform rule in this State, as indicated by the authorities cited, we are constrained to hold the complaint bad for its failure to aver that the deceased had no knowledge of the danger which confronted him and caused his death.

The judgment is reversed, and the cause remanded, with instructions to the court below to sustain the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.