# THE STANDARD CEMENT COMPANY *v.* MINOR, ADMINISTRATRIX.

[No. 7,790. Filed February 13, 1913. Rehearing denied June 18, 1913. Transfer denied October 17, 1913.]

1. MASTER AND SERVANT.—*Injuries to Servant.—Complaint.—Allegations.—Assumption of Risk.*—In an action to recover damages from the master on account of the injury or death of a servant, the complaint must aver facts showing that the servant did not assume the risk of the danger which caused the injury or death. p. 306.

2. MASTER AND SERVANT.—*Injuries to Servant.—Knowledge of Risk.*—Where the knowledge of the servant in respect to the dan-

ger of his employment is equal to that of the master, or where their opportunities for such knowledge are equal, there can be no recovery on the part of the servant for injuries resulting from such risk.  p. 306.

3. MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.—Obedience to Special Orders.*—Where the servant, at the time of receiving his injury, was acting under specific orders and directions of the master and where his injury was the result of such obedience, his right to recover will not be defeated on the ground that he assumed the risk, especially if the master gave him assurances of safety, and even though such servant prior to receiving such assurances had doubts and misgivings as to the danger.  p. 306.

4. MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.—Special Orders.—Complaint.*—In an action for the death of a servant while blasting rock in a quarry, a complaint showing that it was the custom of the employes to ignite the fuses and then retire to the outside of the quarry so as to be beyond the reach of danger, that it was regarded dangerous for anyone to enter the quarry within fifteen minutes after an explosion except where it had been positively ascertained that all the blasts had exploded, that defendant's superintendent, whose duty it was to determine with certainty that all the blasts had exploded, failed to do so, and negligently and carelessly ordered decedent to enter the quarry at once, stating to him that all the blasts had exploded, that decedent did not know that one of the blasts had not exploded, and that in obedience to the order of the superintendent he entered the quarry and was killed by the explosion of a blast, states facts sufficient to show that decedent did not assume the risk and the demurrer was properly overruled.  p. 307.

5. MASTER AND SERVANT.—*"General Order."—"Special Order."*—An order given by a master to his servant to perform the work he is employed to do, leaving him free to adopt his own course as to details, is a general order; but where the servant is directed to do a specific act in a particular way, and the details as to time and manner of performance are pointed out by the master, the order is special.  p. 308.

6. MASTER AND SERVANT.—*Injuries to Servant.—Obedience to Special Order.—Complaint.*—A complaint for the death of an employe while blasting rock in a quarry, based on the negligence of defendant's superintendent in giving a special order directing decedent to enter the quarry without ascertaining that all blasts had exploded, is not open to the objection that it shows that such superintendent was at the time engaged in helping the workmen in preparing shots for blasting, and was therefore a fellow servant of decedent.  p. 308.

7. MASTER AND SERVANT.—*Injury to Servant.—Contributory Negligence.—Jury Question.*—Where an employe on being ordered by the defendant's superintendent to reënter a quarry immediately after an explosion, expressed some doubt as to whether one of the shots had gone off, whereupon such superintendent said, "That's all, let's go in," it cannot be said as a matter of law that decedent was guilty of contributory negligence. p. 309.

From Floyd Circuit Court; *William C. Utz,* Judge.

Action by Maggie Minor, administratrix of the estate of Wesley Minor, deceased, against the Standard Cement Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*M. Z. Stannard* and *Jonas G. Howard, Jr.,* for appellant. *Harry L. Means* and *George H. Voigt,* for appellee.

LAIRY, J.—Appellee as administratrix of her deceased husband, Wesley Minor, recovered a judgment for damages occasioned by his death, which was caused by an explosion of a blast which occurred in a quarry operated by appellant company by whom Wesley Minor was at the time employed.

Three errors are relied upon for a reversal of the judgment. The first is predicated upon the alleged insufficiency of the complaint; the second, upon appellant's exceptions to the conclusions of law pronounced by the court upon the special finding of facts; and third, upon the overruling of appellant's motion for a new trial. Practically the same question is presented by these several assignments. Appellant asserts that the complaint is insufficient because it does not state facts showing affirmatively that the danger which caused the injury was not one of the risks assumed by the servant. For the same reason it is claimed that the special finding of the court is insufficient to sustain a judgment in favor of appellee and that the court therefore erred in its conclusions of law. It is also contended on behalf of appellant that the trial court erred in overruling its motion for a new trial for the reason that the evidence most favorable to appellee affirmatively shows that he assumed the risk of

the danger which caused his injury and that he was guilty
of contributory negligence in encountering a known danger.

The facts as disclosed by the complaint and the evidence
are practically without dispute. Appellant was a corpora-
tion engaged in the manufacture of cement and operated a
quarry in connection with its cement works. Richard Cum-
mins was the general superintendent of the cement works
and quarry, and his duties were to manage, direct and con-
trol all of the business affairs of the company both at the mill
and quarry, and to direct the work of the men there em-
ployed. Appellee's decedent was at the time of his death
employed in the quarry and it was a part of his work to
blast down rock by means of shots or cartridges placed in
the holes drilled for that purpose. It is averred in the com-
plaint that he was required and bound by his contract to
obey Cummins and conform to his directions in the perform-
ance of his work. The quarry in which the work was being
performed was located under ground and was reached by
means of a tunnel about seventy feet in length. When two
or more shots were prepared it was the custom of the em-
ployes of the quarry to ignite the fuses and then retire to
the outside of the quarry so as to be beyond the reach of
danger. The fuses were cut of different lengths so that
ordinarily the shots occurred separately and could be
counted, and it was customary to count the reports, which
could be heard outside of the mine, for the purpose of de-
termining whether all of the blasts set had exploded. In
some instances the fuse by reason of being wet or for some
other reason would burn very slowly and the cartridge with
which it was connected would not explode until a consider-
able length of time after the others, sometimes as long as
fifteen minutes. In other instances the lighted fuse would
fail entirely to communicate fire to the cartridge and it would
fail to explode. In view of these facts it was regarded as
dangerous for anyone to enter the quarry within fifteen
minutes after an explosion except in cases where it had been

positively ascertained by counting the reports of the explosions that all of the blasts had exploded, and, in cases where there was doubt or uncertainity as to whether all of the blasts set had exploded, it was the custom of the employes to remain outside of the mine for fifteen minutes after such explosion.  On the day upon which the fatal accident occurred three blasts had been prepared in the quarry and the fuses communicating therewith had been ignited in the presence of Mr. Cummins, the superintendent.  After the fuses had been ignited, the superintendent and the workmen among whom was appellee's decedent, retired to the outside of the quarry.  The complaint, in substance, alleges that it was then and there the duty of Cummins to count the reports and determine whether all of the cartridges exploded so that he might know whether it was safe to order the workmen back into the quarry; but that, when the explosion occurred, he did not determine with certainty that all of the blasts had exploded.  It is further alleged that Cummins knew all of the facts alleged and that he negligently and carelessly ordered Minor to enter the mine at once, stating to him that all of the cartridges had exploded.  It is also charged that Wesley Minor did not know that one of the cartridges had not exploded and that in obedience to the order of the superintendent he entered the quarry and was killed by the explosion of one of the cartridges.

The specific objection urged against the complaint is that it fails to state facts sufficient to show that Minor did not assume the risk of a known danger.  It is asserted that the averment, that he did not know that one of the cartridges had not exploded is not equivalent to an averment that he did not know the danger of entering the quarry under the conditions stated in the complaint; and that such an averment, when construed most strongly against the pleader, amounts only to a statement that he was doubtful upon the question.  It is further claimed that the negligence alleged

against the superintendent consisted in giving an order to Minor to enter the quarry at a time when he was uncertain, that the blasts had all exploded and that, therefore, the knowledge of the servant, as shown by the complaint, was equal to the knowledge of the master.

It is well settled by the authorities that, in an action to recover damages from the master on account of the injury or death of a servant, the complaint must aver facts

1.  showing that the servant did not assume the risk of the danger which caused the injury or death. It is accordingly held that where the complaint fails to allege that the injured or deceased servant had no knowledge of such danger, it is insufficient. *Peerless Stone Co.* v. *Wray* (1895), 143 Ind. 574, 42 N. E. 927; *Columbia Creosoting Co.* v. *Beard* (1909), 44 Ind. App. 310, 89 N. E. 321; *Chicago, etc., Stone Co.* v. *Nelson* (1904), 32 Ind. App. 355, 69 N. E. 705; *Indiana, etc., Oil Co.* v. *O'Brien* (1903), 160 Ind. 266, 65 N. E. 918, 66 N. E. 742. It has also been held that

2.  where the knowledge of the servant in respect to the danger is equal to that of the master, or where their opportunities for such knowledge are equal there can be no recovery on the part of the servant. *Staldter* v. *City of Huntington* (1899), 153 Ind. 354, 55 N. E. 88; *Bennett* v. *Evansville, etc., R. Co.* (1912), 177 Ind. 463, 96 N. E. 700, 40 L. R. A. (N. S.) 963; *Cleveland, etc., R. Co.* v. *Powers* (1909), 173 Ind. 105, 88 N. E. 1073, 89 N. E. 485.

3.  The strict rule above stated has been relaxed in cases where the servant, at the time of receiving the injury was acting under specific directions and orders of the master and where his injury was the result of such obedience. In such cases, especially where the master gives assurance of safety, he may obey the order even though before such assurance was given he may have had doubts and misgivings as to the danger, and by so doing he does not assume the risk. Cooley, Torts *55; *Stuart* v. *New Albany Mfg. Co.* (1896), 15 Ind. App. 184, 43 N. E. 961; *Mellette* v. *Indianapolis, etc.,*

*Traction Co.* (1910), 45 Ind. App. 88, 86 N. E. 432; *Brazil Block Coal Co.* v. *Hoodlet* (1891), 129 Ind. 327, 27 N. E. 741; *Cincinnati, etc., R. Co.* v. *Lang* (1889), 118 Ind. 579, 21 N. E. 317; *Taylor* v. *Evansville, etc., R. Co.* (1889), 121 Ind. 124, 22 N. E. 876, 6 L. R. A. 584, 16 Am. St. 372; *Republic Iron, etc., Co.* v. *Berkes* (1904), 162 Ind. 517, 70 N. E. 815; *City of Lebanon* v. *McCoy* (1894), 12 Ind. App. 500, 40 N. E. 700; *Ohio, etc., Mining Co.* v. *Hutchings* (1909), 172 Fed. 201, 96 C. C. A. 653; *Walter* v. *Fisher* (1901), 96 Ill. App. 590; *Levy* v. *Rosenblatt* (1902), 21 Pa. Sup. Ct. 543; *Barrett, etc., Co.* v. *Schlapka* (1903), 110 Ill. App. 672; *Merriweather* v. *Sayre Mining, etc., Co.* (1909), 161 Ala. 441, 49 South. 916.

In the case at bar, as shown by the averments of the complaint, Cummins, who stood in the place of the master, assumed to know that all of the cartridges had exploded and so informed Minor. This was an assurance of safety and was sufficient to justify Minor in obeying the order given. He might rely upon the assurance given, especially as the superintendent professed of a certainty to know a fact concerning which Minor had only his doubts. Under such circumstances, the assurance of the master has the effect of lulling the servant into a sense of security and relieves him of the assumption of risk upon the same principle that is applied in cases where a servant is induced to continue in the service by a promise on the part of the master to repair defective machinery or appliances. In such cases the servant is not denied a recovery upon the ground of assumption of risk even though he knows that the master has failed to keep his promise to remove the danger. *Daugherty* v. *Midland Steel Co.* (1899), 23 Ind. App. 78, 53 N. E. 844; *Romona Oölitic Stone Co.* v. *Phillips* (1894), 11 Ind. App. 118, 39 N. E. 96; *McFarland Carriage Co.* v. *Potter* (1898), 21 Ind. App. 692, 51 N. E. 737; *East Chicago Iron, etc., Co.* v. *Williams* (1897), 17 Ind. App. 573, 47 N. E. 26. The order given in this case was a

special order and not a general one. When a master
5. gives an order to a servant to perform work which he
is employed to do, leaving him free to adopt his own
course as to details, and to exercise his own discretion in
respect thereto, this is a general order; but, when he gives
an order directing a servant to do a specific act in a partic-
ular way, pointing out the details as to time and manner of
performance and thus substitutes his judgment and discre-
tion in respect to details for that of the servant, such an
order is a special one. The usual custom of doing the work
as shown by the complaint was to remain out of the quarry
for fifteen minutes after the first report of an explosion in
case there was any doubt as to whether the cartridges had
all exploded. The superintendent gave an order at variance
with the usual custom of the workmen when left to exercise
their own discretion. He ordered Minor to go in at once
without waiting the usual time assuring him at the time that ·
the shots had all exploded. We are of the opinion that the
complaint states facts showing that the risk was not assumed
and that the demurrer thereto was properly overruled.

The complaint avers and the evidence shows without dis-
pute that Cummins had full and complete charge of the mill
and quarry operated by appellant and that he had
6. full control and direction of the men employed therein
and that they were required to conform to his orders.
Appellant contends, however, that, at the time of the acci-
dent its superintendent was engaged in assisting the work-
men in preparing shots for blasting which were the duties
the servant owed to the master, and that in respect to such
duties he was a fellow servant with Minor. This position is
not tenable for the reason that it appears that the negligent
act which resulted in the injury was not done in the per-
formance of a duty which the servant owed to the master;
but, on the contrary the negligent act was the giving of a
special order directing the master's business. The giving
of such orders is the business of the master. *Oölitic Stone*

*Co.* v. *Ridge* (1910), 174 Ind. 558, 91 N. E. 944; *Island Coal Co.* v. *Swaggerty* (1903), 159 Ind. 664, 62 N. E. 1003, 65 N. E 1026; *Nall* v. *Louisville, etc., R. Co.* (1891), 129 Ind. 260, 28 N. E. 183, 28 N. E. 611.

The finding follows the complaint and the evidence supports the finding. The evidence shows that Cummins gave Minor an order to enter the quarry immediately after the explosion. Before giving such an order it was his duty to use reasonable care to assure himself that the cartridges had all exploded. The evidence justified the finding that it was his duty to count the reports of the explosions. The evidence shows that Minor was a man of experience in the work in which he was engaged, and that, at the time of the report of the explosions, he was standing near the superintendent just outside of the quarry. This evidence is referred to by appellant to show that his opportunity to know whether all of the cartridges had exploded was equal to that of the superintendent. In addition to these facts, however, the evidence shows that after the report the superintendent said, "They have all gone off, two went off together, go in and see what they have done." Minor expressed some doubt as to whether one of the shots had gone off, whereupon Cummins said, "That's all, let's go in." Under the authorities cited by appellant, if Minor had entered the quarry knowing that one of the shots had not exploded he would be held to have assumed the risk; or if he had known that the statement made by Cummins was a mere opinion or guess, or that it was not based upon knowledge not possessed by himself the same rule might possibly apply. The language used by the superintendent was positive and may have been sufficient to remove any doubts that lingered in the mind of decedent. We can not say as a matter of law that the risk was assumed or that decedent was guilty of contributory negligence.

Judgment affirmed.

NOTE.—Reported in 100 N. E. 767. See, also, under (1) 26 Cyc. 1397; (2) 26 Cyc. 1202; (3) 26 Cyc. 1213, 1221; (6) 26 Cyc. 1394;

(7) 26 Cyc. 1235, 1482. As to liability of employer ordering employe to perform dangerous work, see 97 Am. St. 884. As to servant's assumption of risk in obeying orders to perform obviously dangerous work, see 4 L. R. A. (N. S.) 830. On the question of attempting dangerous work in obedience to orders, without fully appreciating the danger, see 4 L. R. A. (N. S.) 838. On servant's right of action for injuries received in obeying direct command accompanied by assurance of safety, see 30 L. R. A. (N. S.) 453. For the view that direct command makes assumption of risk and contributory negligence questions of fact only, see 30 L. R. A. (N. S.) 442. On the question of contributory negligence of employe in obeying direct command, see 30 L. R. A. (N. S.) 441.